NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

SALOMENA KUROPATA, PETITIONER, v. NATIONAL SUGAR
REFINING COMPANY, RESPONDENT.

Decided June 16, 1938.

For the petitioner, *George A. Henderson.*

For the respondent, *McCarter & English.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

On August 8th, 1937, one Frank Kuropata was an employe of the respondent employed at its plant located in Edgewater, New Jersey. On that particular day he was engaged in assisting in cleaning out a tank in the company's plant. The work of cleaning the tank had been completed and the decedent reached upward to grasp an electric light extension line with his left hand and hand it out of the tank to a co-employe. As he did so he suddenly fell to the bottom of the tank which was made up of steam pipes some of which were hot. He was found with his face down and his arms on those pipes which were hot. The said Frank Kuropata was then lifted out of the tank and died shortly thereafter at the plant of the respondent without regaining consciousness and despite efforts to revive him.

The question naturally arising was what in fact was the cause of the employe's death. The petitioner herein filed her petition on December 21st, 1937, as widow of the decedent and named therein herself and two daughters as dependents.

In that petition she seeks compensation on the theory that the decedent met his death as a result of an accident arising in and out of his employment with the respondent and in answer to question No. 17 as to the nature of the accident, she alleges that the petitioner suffered an electric shock and severe burns and was electrocuted, dying approximately two hours thereafter.

The respondent in its answer denied that the decedent-employe died as a result of any accident arising in and out of his employment and on the contrary alleged that the decedent's death was due to natural causes not connected with his employment.

At the trial of the case various lay witnesses and medical witnesses testified in behalf of both the petitioner and the respondent. From the testimony it appears that at the time of the occurrence, certain laymen surmised that the decedent had suffered an electric shock when grasping the electric light extension cord and the police department was so notified and immediately dispatched officers to the respondent's plant for the purpose of administering first aid. On the arrival of the police at the plant of the respondent, artificial respiration was attempted but the decedent failed to respond. It appears also that Dr. D'Agostin was called to the respondent's plant immediately after the occurrence and on his arrival took part in endeavoring to revive the decedent to no avail and he pronounced the said employe dead.

Because of the report of electric shock, the police officials took charge of the electric light extension cord involved and took the same to police headquarters. Lieutenant Flannery and Officer Coleman both of the Edgewater police department were called as witnesses by the petitioner. Both of these police officials testified that they tested the electric light extension cord in question and that it was in good condition free from any short circuit or other defects. Officer Coleman testified specifically that he had been, prior to his connection with the police department, employed as an electrician for years and that he had tested the electric light extension equipment both with a current of one hundred and ten volts and

with a magneto and that he could produce neither a short circuit nor a ground; that the socket and cord were in good shape and the insulation perfect. He testified that in his opinion Frank Kuropata could not receive a shock from the use of the said electric light extension cord equipment.

All of the police officials as well as the medical witnesses who saw the body of the deceased testified that there were no burns on the petitioner's left hand which he had used to grasp the light and that neither were there any burns on his feet. From all the testimony as to the burns on the petitioner's body, I find that they were caused by the hot steam pipes on the bottom of the tank and were not electric burns.

The petitioner produced several doctors, none of whom had actually seen the body of the decedent nor attended an autopsy which was subsequently performed upon him. The testimony of the petitioner's medical witnesses was directed to the answering of a hypothetical question put by petitioner's counsel necessarily prior to the admission of the respondent's proof in the case. Based upon the hypothetical question, the petitioner's doctors attributed the decedent's death to electrocution. However, in arriving at their conclusion, the doctors testified that they took into consideration the fact as given to them in the hypothetical question that the decedent's face was red and not cyanotic. Their opinion was, however, that if the decedent had died of heart failure or of a heart condition due to disease, they would expect to find his face cyanotic. It was also brought out by the petitioner's medical witnesses that if the decedent suffered an electric shock, rigor mortis would immediately set in.

The respondent on its case produced Dr. Henry D'Agostin, who was the physician immediately called to the respondent's plant on the day in question and who sought to revive the petitioner. This doctor testified that the man's face was deeply cyanotic; that he found no pulsations and that he was unable to revive him. He stated he found no evidence whatsoever of electric shock or electric burns on the decedent's body and that he attended an autopsy which was performed by assistant county physician, Dr. Greenfield, on the following

day, August 9th, 1937. He also testified that rigor mortis had not set in at the time of his attendance of the decedent and did not do so until several hours after his first attendance. Dr. Greenfield was called by the respondent and he testified to the performance of the autopsy in conjunction with Dr. D'Agostin. He said that he found steam burns over the face, right hand and forearm of the decedent and that he found no burns on his left hand or feet and no evidence whatever of electric shock. He testified in accordance with the death certificate and autopsy report produced by him that the death of decedent was caused by coronary sclerosis and occlusion, contributory cause, chronic myocarditis, all confirmed by his autopsy. The autopsy showed that the decedent's heart muscle was soft; that the aortic ring showed marked advance atheromatous changes; that there was a bone-like ring—some plaques on the arch of the aorta; that both coronaries showed advanced coronary disease; that they were pipe stem in character and almost occluded in places with bonelike concretion.

It was on the basis of his findings by autopsy that Dr. Greenfield in his death certificate certified that the death of the decedent was not due to accident but due to coronary sclerosis and occlusion.

In addition to Dr. Greenfield, the respondent produced Dr. Jack Blumberg, who testified that he had had considerable experience in electric shock cases and that he had considered, together with the other factors in the case, the findings as revealed by the autopsy and that in his opinion the decedent's death was due solely to natural causes and in no way caused by an electric shock. Dr. D'Agostin and Dr. Greenfield also testified that in their opinion the death of the decedent was in no way attributable to an electric shock but that he had died of natural causes as set forth in the autopsy findings, to wit, an advanced heart condition.

After considering all the testimony in this case as well as the exhibits, some of which testimony I have outlined hereinabove, I have come to the conclusion that the petitioner has failed to sustain her burden of proving that the decedent

met with an accident arising in and out of his employment with the respondent.

I find as a matter of fact that the decedent did not sustain an accident arising in and out of his employment and was not electrocuted. I also find as a matter of fact that the decedent's fall and death were due to natural causes, to wit, a heart condition technically referred to by Dr. Greenfield as coronary sclerosis and occlusion. I find further as a matter of fact that there is no relationship between the grasping by the decedent of the electric light extension cord and his death as a result of his heart condition, but that those circumstances were merely a coincidence in point of time. I find further that the electric light extension cord was in good safe working order and did not subject the decedent to an electric shock.

While it is true that the death of the decedent took place at the plant of the respondent at a time when he was engaged in his employment, that in itself is not sufficient to entitle the petitioner to compensation. See *Johnson* v. *Ulster Iron Works,* 9 *N. J. Mis. R.* 239; 153 *Atl. Rep.* 95; *affirmed,* 109 *N. J. L.* 267; 160 *Atl. Rep.* 635; *Armstrong* v. *Union County Trust Co.,* 14 *N. J. Mis. R.* 648; 186 *Atl. Rep.* 522; *Nardone* v. *Public Service,* 113 *N. J. L.* 540 (at *p.* 550); 174 *Atl. Rep.* 745.

In order for the petitioner to recover she must not only prove the death of the decedent arose in the course of his employment, but that the same arose out of his employment and, as stated above, in this case the petitioner has failed to prove that the death of decedent arose out of his employment with the respondent, contrariwise, the respondent has proved the decedent's death was solely due to natural causes.

It is, therefore, * * * adjudicated, that the decedent, Frank Kuropata, did not die as a result of an accident arising out of and in the course of employment with the respondent and is ordered that the petition filed herein be and the same is hereby dismissed.

JOHN C. WEGNER,
*Referee.*