EDITH M. BURTON, PETITIONER, v. BOARD OF EDUCATION
OF BOROUGH OF VERONA, RESPONDENT.

Decided March 22, 1943.

For the petitioner, *Riker, Marsh & Shipman.*

For the respondent, *William P. Braun.*

The case *sub judice* presents an issue of novel impression since a diligent search fails to reveal to date a reported decision analogous to the facts herein contained. It involves primarily the question of whether or not a school teacher injured in connection with a national rationing program can claim compensation from the Board of Education by whom she is legally employed.

The facts, as adduced before me, indicate that the petitioner had been employed for a great many years as a teacher of English in the high school operated by the Board of Education of the Borough of Verona. She admittedly has been teaching long enough to acquire tenure of office and her contract of employment (*Exhibit P-2* for identification), which is in writing, is short and specific. By its terms, the respondent employed her to teach in the Verona public schools at a salary specified. It requires that she hold, or produce before beginning her teaching, a valid permanent secondary teaching certificate, and further constitutes an acceptance of the aforesaid employment with an agreement to faithfully do and perform the duties under the same and to observe and enforce

the rules prescribed for the government of the school by the respondent.

On May 12th, 1942, she passed her immediate superior, Mr. Sampson, the principal of the high school, on the stairs in the school at which time he is quoted as saying "We will need you on gas rationing tonight. The assignments are on the bulletin board." An examination of the bulletin board notice (*Exhibit P-3*) disclosed her name listed with various other teachers as well as ten or more lay people, the parents of pupils in the school system. These names were variously allocated for various periods of time under certain named schools, the petitioner being listed under Brookdale Avenue School, 5:30 to 9:00. She reported at Brookdale Avenue School, which incidentally was not the school at which she was regularly employed, and after assisting in the gasoline rationing registration left the premises about 9:00 P. M. and while proceeding down some outside steps leading to a driveway fell and fractured her right ankle. This, she claims, constituted a compensable accident.

I have carefully reviewed the various exhibits including *P-1* and *P-2*, which were instructions to county and city superintendents and supervising principals issued by the New Jersey State Commissioner of Education on request of the United States Office of Education and the Office of Price Administration, and *P-4*, which was issued to the superintendents, supervising principals and principals of school districts in the County of Essex. Nowhere in any of the foregoing is there included any order or instruction making it mandatory or compulsory for teachers to carry on the work outlined therein.

Our statute requires that personal injuries, in order to be compensable, must be the result of accidents arising out of, and in the course of, the employee's employment. *R. S.* 34:15-7; *N. J. S. A.* 34:15-7. These elements must concur in order to entitle an employee to compensation. *Kuropata* v. *National Sugar Refining Co.,* 16 *N. J. Mis. R.* 383; 199 *Atl. Rep.* 897; *Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181. The petitioner advances *Bird* v. *Lake Hopatcong Country Club,* 119 *N. J. L.* 415;

197 *Atl. Rep.* 282, as authority for the contention that her situation meets the prescribed test. In that case the court reiterated the original pronouncements in *Bryant* v. *Fissell*, 94 *N. J. L.* 72; 86 *Atl. Rep.* 458, to wit:

"In order for an accident to arise out of one's employment, it must have been a risk which might have been contemplated by a reasonable person as incidental to his employment; and the risk is incidental to his employment when it belongs to or is connected with that which the employee is obliged to do, or is called upon to do in order to fulfill his contract of hire."

In the Bird case a caddy, whose duties were general and included many items not directly connected with caddying, was injured when he fell from a tree from which he had been picking apples under the direct instructions and supervision of his superior. The case at bar presents no such situation. Here was no indefinite, oral contract of employment for unskilled labor. There can be no question of employment by sufferance nor could there be any thought in the mind of the employee that failure to act would bring about the ill will or antagonism of her immediate superior and perhaps interfere with her future employment. She was adequately protected by a written contract of employment clearly defining her obligations as professional in character and also by tenure of office, the statutory protection of which is most specific. *R. S.* 18:13-16, *et seq.; N. J. S. A.* 18:13-16, *et seq.* The activity in which she was engaged when the accident occurred was not one related to teaching or any related subject-matter coming within the broad, general purpose for which the respondent was organized. It had its inception in one of the many national defense activities which have developed as necessary since Pearl Harbor. It presents a striking example of the distinction between the regimented slavery of a totalitarian state and the self-imposed discipline and voluntary co-operation of a free people. When it became evident to the national authorities that some control must necessarily be exercised over petroleum products in the eastern states, the assistance of the citizenry, and particularly of the members of the school systems, was requested in the registration of car owners. This request in turn was directly

transmitted from the Commissioner of Education of our state in form of a letter addressed to city superintendents, county superintendents, supervising principals and helping teachers. The supervising principal of the respondent board in making up the list on the so-called assignment did not have every teacher in the system assigned but did include non-teacher volunteers in a number which he has variously estimated from ten to twenty-five.

Despite the protestations of the petitioner and her witnesses to the contrary, I am constrained to the conclusions that the activities of the petitioner on the occasion of her accident were in nowise contemplated as incidental to her employment; did not belong to and were not connected with that which she was obliged to do or called upon to do in order to fulfill her contract of hire; that it was not an extracurricular activity as a teacher but was a voluntary, patriotic undertaking accepted as a duty by all who participated whether teachers or lay people, a duty not to the Board of Education of the Borough of Verona, but a duty as citizens of the United States of America. It would be a sad commentary on the loyalty and patriotism of the teachers of the Verona high school if this determination should interpret the testimony of the principal, Mr. Sampson, that:

"I talked the whole program over with the faculty some time before that and got their reaction to it. It was agreed by us that we would accept whatever assignments were given to us by the supervising principals without question as part of our duties," as a grudging acceptance of an addition to their legal obligations under their contract of hire without additional remuneration rather than the cheerful acceptance by free citizens of a voluntary obligation necessitated by the exigencies of war.

The court can well take judicial notice of the outstanding efforts made by teachers throughout our state. It is needless to even comment upon the same as the public press has from time to time editorially and otherwise commented upon this fact. They have frequently assisted in many projects.

In passing, I may comment on the response that every profession has made in connection with the national defense.

Members of the legal profession can be found in many activities in which no thought of remuneration has played the slightest part. One thought, and only one thought, is paramount in the minds of all—an early victory, freedom from dictatorship, and the right to have our participation in the war effort continued on a voluntary basis without the danger of internment in a concentration camp should we refuse on any occasion to respond to a request for assistance.

Having concluded that the petitioner was not injured in an accident which arose out of, during, and in the course of, her employment with the respondent, * * * ordered that the petition be and the same is hereby dismissed.

Judgment to be entered in favor of the respondent.

JOHN C. WEGNER,
*Deputy Commissioner.*