GAGNON, Respondent, vs. DEPARTMENT OF AGRICULTURE AND MARKETS, Appellant.

*May 12—September 12, 1939.*

For the appellant there were briefs by the *Attorney General* and *R. M. Orchard,* assistant attorney general, attorneys, and *Fred M. Wylie* of Madison of counsel, and oral argument by *Mr. Wylie* and *Mr. Orchard.*

For the respondent there were briefs by *Thompson, Myers & Helm* of Racine, attorneys, and *W. L. Jackman* of Madison of counsel, and oral argument by *Mr. Jackman* and *Mr. Peter J. Myers.*

The following opinion was filed June 21, 1939:

FOWLER, J.   As appears from the foregoing statement of facts, the plaintiff applied to the department for a license as a

milk dealer in the Racine district for 1939. After hearings noticed and held pursuant to secs. 93.14 and 93.18, Stats., which govern the procedure, the application was denied on February 3, 1939. The plaintiff duly brought action in the circuit court for Dane county for review of the order of denial. The order was based on findings of fact made by the department. Findings (5) and (6) of these findings read as follows:

"(5) The applicant has, since the department order of December 30, 1937, denying the former application for 1938 license, continued the following violations of law, department orders, and court injunctions: (1) Selling overtest milk and cream. (2) Selling at less than the ordered minimum price. (3) Evading the ordered minimum prices to producers.

"(6) The applicant is unfit and unequipped by reason severally of the foregoing, for the business of a dealer under section 100.03 of the statutes."

The trial judge was of opinion that "there was sufficient evidence to justify the findings of the department," except finding (6) which he regarded as a conclusion of law resting on the preceding findings, but ruled that the findings were insufficient to justify denial of a license.

This ruling of the court was based upon the proposition that a person cannot constitutionally be deprived of the right to conduct a business consisting solely of the sale of his own farm products on grounds not affecting the public health or safety. But as the plaintiff applied for a license she cannot assert in the proceeding in which she demanded a license that the statute under which she applied cannot constitutionally be applied to her. If the licensing statute cannot be applied to her then she can sell the milk of her own cows without procuring a license and she cannot complain that a license was denied. It would seem to go without saying that if a license is not required to enable her to sell such milk she is not entitled to have one granted to her. A person applying for a license under a statute cannot attack the constitutionality of the statute as a whole in the proceeding wherein

he is demanding the license. *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 442, 87 N. W. 561, 11 Am. Jur. 767, sec. 123. Upon like reason such person cannot complain that the statute is unconstitutionally applied to him. Thus, we need only consider whether the findings of the department are sustained by the evidence, and if so, whether the facts found justify denial of the license. In handling the case we will only consider finding (5) above quoted, and we will limit our inquiry to whether the plaintiff sold overtest milk and cream at less than the ordered minimum price, or otherwise violated the orders of the department.

It will be borne in mind that the plaintiff had a license for the year 1937, and was refused a license for the year 1938, and the instant case involves denial of a license for the year 1939. We will only consider violations of orders or statutes since January, 1937.

In January, 1937, the general order of the department in force fixed the minimum dealer price at twelve cents a quart retail for milk of 3.8% butterfat content or less; 3.8% to 4.4%, thirteen cents a quart; 4.4% or over fourteen cents a quart. In that month ten samples of milk of plaintiff, all sold at twelve cents, were taken and tested from 4 to 5% butterfat content. In March, 1937, the order was somewhat changed, but the price schedule for milk sold at retail was the same. On January 3, 1938, another order was promulgated fixing the minimum price for milk at 3.8% butterfat content at twelve cents a quart retail, thirty-eight cents a gallon wholesale; 3.8% to 4.4%, thirteen cents retail, eleven and one-half cents a quart (forty-six cents a gallon) wholesale; milk over 4.4%, fourteen cents a quart retail, twelve and one-half cents a quart (fifty cents a gallon) wholesale. In April, when plaintiff was selling only to hospitals, except a few quarts to two or three retail dealers, milk was sold to the hospitals at forty cents a gallon testing at one hospital 4.4%, the other 4.5%, and at the farm 4.3%. Other tests

in April were 4.1% and 3.8%. Cream testing 28% as against a high of 25% was sold at fifty cents a quart, the price of the latter. "A donation" of about ten per cent of the monthly bill was made to one hospital. "Contributions" were also made to the other "regularly," but the sister in charge could not state whether it was on a percentage basis. When one of the hospitals quit taking, the donations to that hospital ceased.

Plaintiff testified at the hearing December 13th, in effect, that she was only selling milk produced by her own cows; that she tried to make fifty-cent cream test 22% by taking cream and milk and mixing it; that she was selling bottled milk to a few customers at fourteen cents; that they bought her milk because it was rich milk; that this milk was the same as went to the convent. It appears that plaintiff's cows were high-grade Guernseys and gave milk of unusually high butterfat content which was sold without testing as to butterfat content.

The general orders of the department fixing the price of milk and cream also contained provisions (3) and (5), the former reading:

"(3) Scheduled regulated milk may be bought or sold only in scheduled units, as prices are listed for such units, and of scheduled butterfat content when such content is scheduled."

The latter provided that no person should give any discount or thing of value in connection with a sale under the act that would result in a price less than prescribed by the order, whether the result be direct or indirect.

We consider that the evidence above stated sufficiently shows that the plaintiff was selling overtest milk and cream at minimum prices fixed for that of less butterfat content, and that the donations to the hospitals were in effect a rebate, or giving of a thing of value as inducement to buying, and that these were unfair trade practices prohibited by sec. 100.20, Stats., and violated the orders made by the de-

partment under subs. (1) and (2) of that section. Sec. 100.20, Stats., so far as here material, reads:

"(1) Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited.

"(2) The department, after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair. The department, after public hearing, may issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair."

As the findings of the department here considered are supported and by themselves constitute sufficient grounds for the order of the department denying the plaintiff a license the judgment of the circuit court must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the record remanded with directions to the circuit court to enter a judgment of affirmance.

A motion for a rehearing was denied, with $25 costs, on September 12, 1939.