NORTHERN TRUST COMPANY, Executor, and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*March 9—April 11, 1939.*

*Wallace Reiss* of Milwaukee, for the appellants.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents Fred L. Maytag Estate, Ceylon Court Farms, and American Surety Company there was a brief by *James E. Coleman,* attorney, and *John S. Barry* of counsel, both of Milwaukee, and oral argument by *Mr. Barry.*

MARTIN, J.    There is no question as to Gilbert's right to compensation.   It is a question as to who must pay such compensation.    Gilbert was accidentally injured November 12, 1936, while engaged in operating a corn shredder on the S. Cecile Young farm.   The Maytag estate farm and the Young estate farm adjoin.   Gilbert was the manager of the Maytag farm.   One Reynolds was the manager of the Young farm.   For many years there had been an exchange of labor between the two farms.   At such times, employees of the Young farm would perform labor on the Maytag farm and in return employees of the Maytag farm rendered services on the Young farm.   They endeavored to balance the interchange of labor as nearly as possible.   The Maytag farm owned the corn shredder, and when it was used on the Young farm a maintenance charge of $2 an hour was made.   Aside from this maintenance charge for the corn shredder, no money was paid by either farm for such labor of the other. On November 12, 1936, the day of the accident in question, certain employees of the Maytag farm, including Gilbert,

with the Maytag corn shredder, had gone to the Young farm for the purpose of shredding corn. While so engaged, Gilbert was in direct charge of the mechanical operation of the shredder. Both farms were covered by compensation insurance. The Young farm's compensation liability was insured with the Employers' Liability Assurance Corporation; the Maytag farm's compensation liability was insured with the American Surety Company. Gilbert was an employee subject to the compensation act. Before the day of the accident, certain employees of the two farms had done one day's husking on the Maytag farm. The exchange of labor was a voluntary arrangement. When work was being done on the Maytag farm, such directions as were necessary were given by Gilbert, the manager of that farm. When work was being done on the Young farm, such directions as were necessary were given by Reynolds, the manager of that farm. Gilbert testified:

"We never rented this machine out to anybody else; it was used exclusively on our and the Young farm. Before going to the Young farm we had done one day's husking on our own estate and if I am not mistaken the Young employees were in there that first day. We finished the job we were on that one day and moved our machinery to the Young estate the following day. I had consented to leave our farm and go over on his job because the Young field was in better condition to cut than ours.

"Q. Was any record kept of the hours spent by the men on either job? A. No, sir."

He further testified:

"Both I and Mr. Reynolds were interested primarily in getting the corn-shredding job done on our respective farms. When we were working on our farm I knew where I wanted the corn put and where I wanted my sileage put and the other operations, and that was the form of direction that I gave as to places. This was because there were certain spots that I had picked out for the placing of those various materials. The same thing was true on the Young farm; when we were on the Young farm those general directions were given by

Mr. Reynolds. As to the operation of the machine I was familiar with that and I went ahead and operated the machine on both farms."

Gilbert further testified:

"On each occasion I consented to go over on the other farm and do the work."

On the question of the identity of the employer, the commission, upon the petition of the Fred L. Maytag estate and its insurer for a review of the findings and order made by the chief examiner, made the following findings of fact:

"That said applicant [Gilbert] was in the general employ of said Fred L. Maytag, since deceased, as manager of a farm owned by said Maytag; that one Reynolds was an employee of S. Cecile Young estate as manager of a neighboring farm owned by said estate; that said managers had made an arrangement for exchange of labor by employees on the two farms in the case of work requiring a larger crew than either farm had for itself, and also for the use on the Young farm of certain farm machinery owned by Maytag on his farm; that said arrangement had continued for some years; that the Young estate paid the cost of operation of said machinery when used on its farm, labor, however, being compensated for purely on an exchange basis, each farm continuing to pay the wages of the men in its general employ; that the owners had knowledge of the arrangement and acquiesced therein; that at the time of the injury the applicant and other employees of the Maytag farm were working on the Young farm, with employees of that farm, pursuant to this arrangement and were engaged at the shredding of corn harvested on the Young farm and for the use of the Young farm; that Reynolds was present and was in general charge of the work; that the shredder and its motive power were the property of Maytag, for the use of which the Young estate was to pay to Maytag a charge equivalent to the cost of its maintenance during said work, the Young estate also providing the fuel; that the shredder was never rented out for use on any other farm; that the applicant was operating the shredder when injured; that the work being performed was the work of the Young estate; that the right to control

the details of the work rested in the Young estate; that the work was being done for the benefit primarily of the Young estate; that the applicant, having made the arrangement pursuant to which the work was being performed, consented to such special employment as the exchange involved; and that at the time of his injury the applicant was in the employ of the Young estate as his special employer for the time being."

In *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 163, 235 N. W. 433, the court said:

"The relation of employer and employee exists as between a special employer to whom an employee is loaned whenever the following facts concur: (a) Consent on the part of the employee to work for a special employer; (b) actual entry by the employee upon the work of and for the special employer pursuant to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue." See cases cited. To the same effect see *Western W. & I. Bureau v. Industrial Comm.* 212 Wis. 641, 645, 250 N. W. 834.

In applying this test to the instant case, it appears that Gilbert and Reynolds had made an arrangement for exchange of labor by the employees of their respective farms; that the respective owners had knowledge of the arrangement and approved same; that the work being performed when Gilbert was injured was the work on the Young farm and was for the benefit of the owner thereof. Reynolds, as manager of the Young farm, was present, in general charge of the work, and had the right to control the details and give such general orders as he deemed necessary. If it were one of the other employees of the Maytag farm who had been injured it might well be argued that the relationship of special employer-employee did not exist; that such other employee had not consented to do the work on the Young farm under a new relationship, and that while there working he was doing so in response to the command of his original employer on the Maytag farm. In such case we would have

a factual situation similar to that in *Rhinelander Paper Co. v. Industrial Comm.* 206 Wis. 215, 239 N. W. 412.

The appellants, Young estate and its insurer, contend that Gilbert did not consent to work for said estate as a special employer. However he testified:

"On each occasion I consented to go over on the other farm [Young farm] and do the work. I personally was responsible for allowing the machinery to go over there, it was with my consent to take that employment over to the other farm on that kind of an arrangement. If Mr. Reynolds didn't want our services over there he could have told us to get off the farm."

We think that different inferences and conclusions might well be drawn from Mr. Gilbert's testimony. In such situation, the question is whether there is credible evidence to sustain the findings of the commission. Mr. Steeger, secretary and manager of the Maytag estate, testified that both he and Mr. Maytag knew of the custom of exchanging work; that there was no contract of any kind between the managers of the two farms for the exchange of work—that it was simply a custom. Gilbert having made the arrangements whereby he and other employees of the Maytag farm did work on the Young farm, it would seem to follow that he consented to work for the Young farm. At least, the commission might so conclude. Gilbert makes no claim that he went over to the Young farm to shred corn at the request or command of Mr. Maytag or any superior connected with the Maytag farm.

The appellants, Young estate and its insurer, contend that there is no issue of fact; that the ultimate question as to whose employee Gilbert was when injured presents only a question of law. Of course, the legal relationship would be a question of law, providing different inferences might not be drawn from the facts. In *Tiffany v. Industrial Comm.* 225 Wis. 187, 190, 273 N. W. 519, the court said:

"Plaintiffs contend that, the facts being without dispute, only a question of law is involved. Where, however, from

the facts different inferences may be drawn, a question of fact rather than of law is presented. *Scott & Howe L. Co. v. Industrial Comm.* (1924) 184 Wis. 276, 278, 199 N. W. 159. In this case it is impossible merely by applying a rule of law to the evidence to reach a final determination in the matter. *Tesch v. Industrial Comm.* (1930) 200 Wis. 616, 229 N. W. 194. Before a rule of law can be applied in this case, it must first be ascertained who had control of the operation in which Moy was engaged."

What is said in that case is applicable to the instant case. That is, since different inferences may be drawn from Gilbert's testimony, it must first be ascertained who had control of the operations on the Young farm, in which Gilbert was engaged when injured. The fact that no fixed charge was made for the labor, and that no detailed account was kept of the interchange of labor, did not prevent Gilbert from being a special employee.

"The duration of time of employment is not a controlling factor nor is an agreed rate of wages necessary to the establishment of the relationship. *Johnson v. Wisconsin L. & S. Co.* 203 Wis. 304, 234 N. W. 506." *Neitzke v. Industrial Comm.* 208 Wis. 301, 304, 242 N. W. 163.

The appellants, Young estate and its insurer, contend that the decision in *Powell v. Industrial Comm.* 193 Wis. 38, 213 N. W. 651, rules the instant case. The facts are readily distinguishable. In the *Powell Case,* a farmer arranged to exchange labor with his neighbor and directed one of his farm laborers to proceed to the neighbor's farm and assist about a wood-sawing rig which the neighbor had borrowed to convert some poles into firewood for his own use. While so employed the laborer was injured. The court held that the services of the laborer were for the benefit of his employer, that he was engaged in farm labor at the time of his injury, and was not under the provisions of the Workmen's Compensation Act. In the instant case, Gilbert's employer, the Maytag estate, did not send him to the Young farm to work. He was not one of the ordinary employees of the

Maytag farm; he was the manager. He, personally, made the arrangements to go over to the Young farm to work. He did so on his own accord. In *Murphy Supply Co. v. Industrial Comm.* 206 Wis. 210, 214, 239 N. W. 420, the applicant was jointly employed by the Murphy Supply Company and the Morley Murphy Supply Company. The applicant was injured while on the premises of the Murphy Supply Company. The contention was made that since the applicant was jointly employed by both companies to perform watchman services for both, both companies should be held jointly liable. The court said at page 214:

"The question which this contention presents is one of first impression so far as this court is concerned. While there is authority supporting appellant's contention [citing cases], we do not feel compelled to follow it for the reason that this court has consistently held, ever since the Workmen's Compensation Act was adopted, that the clear intent and purpose of the act is to burden the particular industry in which the injury to an employee occurs, with the damages resulting from such injury. [See cases cited.]

"We deem the rule which seeks so far as possible to place the burden upon the particular industry in which the employee is working at the time of his injury essentially just and fair."

We are of the view that the Industrial Commission in considering the evidence applied the test to be followed in determining whether a person is a loaned employee; that there is credible evidence to sustain the findings, and that the finding that Gilbert was, when injured, in the special employ of the Young estate is conclusive.

The cross appeal of the Maytag estate and its insurer presents two questions:

(1) Should the Industrial Commission include in its award the amounts paid as compensation and expense on behalf of the Maytag estate?

(2) Is the counterclaim for money so paid proper in this type of action?

We do not deem it necessary to discuss these questions since both are answered in the negative by the decision of this

court in Employers Mut. L. Ins. Co. v. Industrial Comm. 230 Wis. 374, 284 N. W. 40. However, the dismissal of said appellants' counterclaim should be without prejudice to their right, if any, to maintain an action in a separate proceeding to recover such amount as paid for temporary compensation and hospital expense.

By the Court.—On the appeal of the Northern Trust Company, a corporation, as executor of the estate of S. Cecile Young, deceased, and the Employers' Liability Assurance Corporation, the judgment is affirmed. On the cross-appeal of the Fred L. Maytag estate and its insurance carrier the judgment dismissing the counterclaim is modified to provide that such dismissal be without prejudice.