JASPERSON and others, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*March 9—April 11, 1939.*

For the appellants there was a brief by *Quarles, Spence & Quarles*, attorneys, and *Kenneth Grubb* and *Henry S. Reuss* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan*, assistant attorney general, and oral argument by *Mr. Levitan*.

For the respondents Hardware Mutual Casualty Company and James Peterson there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *W. L. Jackman* and *H. M. Wilkie*.

FOWLER, J.   The plaintiffs are partners doing business under the name of Whittlesey Cranberry Company and their compensation insurer. The defendants are James Peterson, a trucker, his compensation insurer, and Emmerick, who was an employee of either the Cranberry Company or Peterson and was injured in the course of his employment. The commission found that Emmerick was an employee of the Cranberry Company (hereinafter referred to as the "company"), and ordered compensation to be paid by them and their insurer. The circuit court confirmed the award. Plaintiffs claim that he was an employee of Peterson, and the compensation should have been ordered paid by him and his insurer.

Emmerick was hauling sand in his truck to be spread upon the cranberry marsh of the company. His contract of hire was made upon the marsh the day he began work in the presence of Peterson and Damme. Damme had charge of the spreading of the sand for the company with power to hire and discharge employees for them. The plaintiffs claim that Emmerick's contract of hire must be determined entirely from what was said in the conversation in which these men then and there participated, and that there is no conflict in the testimony of these three men as to what was said. Perhaps if there were no such conflict the plaintiffs' contention should be upheld. But examination of the record discloses a conflict in important particulars. According to the testimony of Emmerick and Damme as to what was said a clear case of a contract of hire between Peterson and Emmerick was made. That contract was that Emmerick was to haul sand for Peterson at $1 an hour, and was to haul at least eight loads a day. The men were working eight hours a day. Peterson had three of his own trucks hauling sand and he was being paid $1 a load. Thus, if Emmerick hauled more than eight loads a day, and he said he could haul at least ten loads in eight hours, Peterson would, under the testimony of Damme and Emmerick, be making $1 a load on all that Emmerick hauled over eight loads a day. Certain other items of evidence strongly indicate that all three persons present during the conversation at the time considered that Emmerick was an employee of Peterson. Peterson on the day of the injury notified his insurer of it. Damme, who made out the cards showing the number of loads hauled, made out a card showing delivery of twenty-six loads on the day Emmerick worked, and the testimony is undisputed that Peterson's trucks hauled only twenty-four loads that day. Emmerick sent a bill to Peterson for either $2 or $3 for his services hauling sand on that day, without stating either the number of hours worked or the number of loads hauled.

He also laid his claim before the commission as against Peterson. But Peterson testified that he told Emmerick he (Emmerick) was to receive $1 for each load hauled. He also testified that "I told him [Emmerick] he could get the same as we were getting, a dollar per load." Peterson also testified that Damme said that Emmerick could get gas from him, and Emmerick asked about paying for it, and Damme said he would take it out of his check. Peterson admits it was he who told Emmerick he could go to work, but also testified that when he made his agreement with Mr. Jasperson, of the company, for hauling sand, Jasperson asked him if he could get other trucks besides his own, and he told Jasperson that he "would do that for him." He also procured another trucker besides Emmerick to put two trucks on the job, but before telling him he could go to work he told Jasperson that this trucker wanted $1.50 a load for one of his trucks which held a yard more than the other and $1 for the other which Jasperson agreed to pay, and told him to "get the trucks for him," and he so told the trucker. After the injury and his adjuster had talked to him about it, Peterson told Jasperson that he didn't want anything more to do with hiring trucks.

Besides this conflict of testimony between Peterson on the one hand and Emmerick and Damme on the other, Emmerick and Damme signed two statements before an adjuster of the insurer of the company, and all of these statements would support the inference that Emmerick was an employee of the company. The statements of both are in conflict with their testimony on the stand in important particulars. Damme's statements are to the effect that he understood that he had hired Emmerick for the company, and that the company was to pay him and deduct the gas furnished him from his pay. In the written statement Emmerick stated that he was to be paid $1 a load, and that he didn't know who was to pay him. Damme claimed on the hearing that his written statements,

so far as contradictory with his testimony, were false, and that he knew they were false when he made them, but he made them because he wanted Emmerick to get compensation, and that he knew the company carried insurance. The company claims these statements are hearsay, and cannot be taken as evidence of the contract of hire. But if this be so, they impeach the testimony of both Emmerick and Damme, and they were proper for consideration in determining whether Peterson's version of the conversation constituting the contract of hire or that of Emmerick and Damme was correct. In view of the statutory rule that the commission's findings are conclusive, they must be sustained if there is evidence to support them. See sec. 102.23, Stats. We cannot say, in view of Peterson's testimony, that there is no evidence to support the finding that Emmerick was an employee of the company. Nor can we say Peterson's evidence is not "substantial" evidence under the requirement of the rule of *Consolidated Edison Co. v. National L. R. Board,* 305 U. S. 197, 229, 59 Sup. Ct. 206, 83 L. Ed. 126, where it is said of a like statutory provision in the National Labor Relations Act:

" 'The findings of the board as to the facts, if supported by evidence, shall be conclusive,' means supported by substantial evidence. . . . Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*By the Court.*—The judgment of the circuit court is affirmed.