Fowler, J.
 

 Two teachers in the Janesville city schools filed applications with the Industrial Commission of Wisconsin for compensation for physical injuries received while engaged in assisting in the issuing by the United States Government of War Ration Book II to consumers of food. The issuing of the books was done by the Federal Office of Price Administration, hereinafter referred to as the “OPA.” Compensation was allowed. The Board of Education, hereinafter referred to as the “Board,” carried compensation insurance. The insurer and the board brought action to review the awards. The court set aside the awards. The Industrial Commission appeals. The applicants have not appealed.
 

 The facts on which the claim of the appellant commission to reversal rests may be summarized as follows: The OPA requested the board to give the use of the schoolrooms of the city and to assign the teachers in its employ to assist in the
 
 *347
 
 issuance of the ration books to the public. The board granted the request and closed the city schools while the books were being issued. The hours of issue were 1:30 to 5 :30 and
 
 7
 
 to 9 p. m. o’clock. According to the general plan formed by the OPA the work of issuing the books was to be done through the schools of the country by volunteers without pay. While the instant work was going on a “member” of the OPA was present “to answer questions.” At Janesville the superintendent of schools was “authorized” by the board to arrange for the “efficient issue of the books.” The superintendent “appointed” the school principals as “site administrators” arid directed each principal to “organize” and “supervise” the work in her school. Each instant applicant was a school principal •and was present in her capacity as such appointee while the work was going on. One of the applicants, Miss Atwood, went to the home of a person to whom it was thought a book had been issued a short time before, of the issue of which there was no record. The principals were charged with responsibility for the books which bore serial numbers and were required to submit reports regarding the issue of all books. While the work was going on the absence of data of the issuance of a book with a certain number was discovered. Miss Atwood went to ascertain whether this book was issued to the person visited and, if it was, to get the information required for her report of its issuance. She went in her own automobile, and received her injury in going from her car back to the room where the work of issuing the books was going on. The other applicant, Miss Baker, received her injury through slipping on the floor of a corridor while going, from one room to another while the work was in progress on an errand connected directly with her work. The applicants were paid their regular salaries for the month during which the rationing work was done. The commission found as fact as to each of the applicants that “at the time of her injury the applicant was performing service growing out of and incidental to her employment and that the injury arose out of her employment.”
 

 
 *348
 
 In the briefs of counsel a multitude of cases pro and con are cited and thirty-five pages of argument are given in support of their respective contentions. If these cases had to be decided upon the rulings and statements of this court made in the opinions filed in these cited cases in which it construed the Workmen’s Compensation Act, hereinafter referred to as the “Act,” as applying or not applying we would have difficulty in determining whether the act applied to the instant cases. But in our view these cases are beside the instant cases, except two of them hereinafter cited which have some indirect bearing. The other cases cited do not apply because the work here involved was being done without pay by volunteers for the United States government as work essential to prosecution of war. There was no “contract, express or implied” between the applicants and the United States government or its agent, the OPA. Nor was there any contract express or implied between the instant applicants and the school board for doing the instant work. True there was a contract of hire between the applicants and the school board for the doing of teaching and work incidental thereto, but it did not include or cover the instant work. By the language of the act, sec. 102.07 (1), Stats., to be within the act the applicant must be “in the service . . . under . . . contract of hire, express or implied.” This implies that the injured person must be under duty, legally obligated, under his contract to do the thing he is doing when injured, and there was no such duty or obligation here. The school board had no lawful power to order and no legal right to request the applicants to do this work. The applicants were under no duty to perform the work. Refusal to perform it would not subject them to discharge or any penalty. They volunteered to do this service, and were glad to do it as their “contribution to the war effort,” as other citizens by the hundreds of thousands volunteered to do it, moved to do it solely by their patriotism and their consciences. They are no more entitled
 
 *349
 
 to compensation for injuries sustained while doing the work than any one of these other volunteers would be. The only case cited that seems to have any bearing on volunteers coming under the act is
 
 West Milwaukee v. Industrial Comm. 216
 
 Wis. 29, 255 N. W. 728, wherein the act was held not to apply to one receiving relief from Milwaukee county who was injured while doing “made work” he volunteered to do.
 
 Kammler v. Industrial Comm.
 
 233 Wis. 173, 288 N. W. 778, is in point in holding that where a city has no power under its charter to authorize the hiring of ballplayers, a ballplayer hired by its athletic board, injured in á ball game, is not within the act. So of the instant applicants where the school board had no statutory authority to take on the work of the OPA.
 

 We believe the above is sufficient to justify affirmance of the judgment before us and do not perceive that any useful purpose would be served by further discussion.
 

 By the Court.
 
 — The judgments of the circuit court are affirmed.