WENDLANDT and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*October 14—November 15, 1949.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*William J. Conway* of Wisconsin Rapids, argued orally for the appellant, Donald Melcher.

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Richard S. Gibbs* and *Kenneth P. Grubb* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

FAIRCHILD, J. The respondent Wendlandt is the owner and operator of the Marshfield Golf Club. He did not hire, pay, or regulate the fees of caddies. He knew that players used caddies and that boys were on the course seeking employment as caddies from patrons, who paid the caddy for his services. When the appellant Melcher acted as a caddy, he was never paid except by the person for whom he caddied. Apparently the only conversations he had with respondent were to the effect that he was told he would have to get a labor permit if he wanted to caddy. Nothing of the kind was procured, but appellant did hand respondent a letter signed by his parents saying that he could caddy. Appellant was injured while engaged as a caddy for a patron of the course. He applied for workmen's compensation as an employee of the respondent as provided in sec. 102.07 (5), Stats. 1941:

"Any person on a golf course for the purpose of caddying for or while caddying for a person permitted to play golf on such course shall be deemed an employee of the golf club or other person, partnership, association, corporation, includ-

ing the state and any municipal corporation or other political subdivision thereof, operating such golf course."

On these facts the Industrial Commission found that respondent had "actual knowledge" that Melcher engaged himself as a caddy on his golf course and "constructive knowledge" that he was caddying at the time of his injury. It awarded $6,300 for thirty per cent permanent total disability plus double compensation because Melcher was a minor working without a permit.

Upon review in the circuit court the Industrial Commission contended that the operator of a golf course having a compensation insurance policy could not attack the constitutionality of sec. 102.07 (5), Stats. 1941. The court, however, held that the respondent was not estopped from challenging the validity of the statute and that the statute in question was not constitutional.

There is no doubt that, as a general principle, one may not enjoy the benefits and privileges of a statute and, after so doing, escape its burdens by attacking its validity. *Gagnon v. Department of Agriculture & Markets* (1939), 232 Wis. 259, 286 N. W. 549. Manifestly, there is justice and reason in a rule which prevents one from accepting the advantageous terms of a statute while attempting to avoid as unconstitutional the unfavorable ones. But the doctrine is not extended to all the details of the law under which benefits have been taken. 11 Am. Jur., Constitutional Law, p. 770, sec. 123; 16 C. J. S., Constitutional Law, p. 186, sec. 89. Therefore, while one engaged in a "regulated" business must comply with certain requirements in order to accept its benefits, this does not mean he is bound by statutory provisions fixing on him burdens which are far removed from the obligations growing out of his enterprise. Furthermore, the respondent does not seek to defeat the statute and at the same time retain an advantage by virtue of any of its provisions. His position is that he does not stand in the relation of employer

to the appellant and that the effort of the legislature in that respect is misspent.

The difference between the statute in existence at the time *Booth Fisheries Co. v. Industrial Comm.* (1924), 185 Wis. 127, 200 N. W. 775, was decided and this case may be pointed out as modifying the proposition of voluntary waiver. At the time of the *Booth Fisheries Case, supra,* the Compensation Act provided the employers with an alternative: They could come under the provisions of the act or they could give up their common-law defense of contributory negligence and remain outside. Today, if an employer has a certain number of employees, he automatically comes under the act.

A waiver of a constitutional right to be effective must be a voluntary act by the individual. The compensation act does not now stand as one under which an employer may or may not act. It is a mandatory act, not one where the obligations are voluntarily assumed.

Furthermore, in order to prevent respondent from challenging the constitutionality of the act under consideration, it must be made to appear that he did act thereunder so as to be estopped from setting up his claim of a violation of his rights. The suggestion that as an employer he undertook by insurance to protect himself against any liability for which he was legally responsible is not sufficient to make him liable for something not legally chargeable to him. Respondent has not done anything which may legally be held to be an inducement to appellant to enter the services in which he was engaged when injured.

Therefore, respondent cannot be held to have elected to waive his right to object to the constitutionality of the section amending the act.

The point is attempted to be made that respondent did not make a timely challenge of the constitutionality of the act. Constitutional rights of a citizen are not to be lightly

regarded. Those rights were acquired at too great a cost and their value to our democracy is too important to be left to chance or to depend upon some nonessential technicality. The mere element of time is not controlling. We do not find any hard-and-fast rules defining a waiver of constitutional rights, privileges, and immunities that go beyond what is necessary to properly decide the cause at issue. It is more in accordance with judicial duty to determine such matters upon a view of the particular rights asserted and denied.

However, the record does disclose that the unconstitutionality of the act was directly and positively asserted early and, certainly, as soon in the proceedings as it could be submitted to a judicial tribunal. The division between the power to make laws, to interpret and apply laws, and to execute laws may not be clear. In providing for enforcement of its enactments, the legislature may clothe administrative officers with power to ascertain whether certain specified facts exist, and thereupon to act in a prescribed manner without delegating to such officers legislative or judicial power within the meaning of the constitution. *State ex rel. Wis. Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 220 N. W. 929; 1 Schneider, Workmen's Compensation Law (2d ed. 1932), p. 61, sec. 5. But the legislature cannot confer upon tribunals, other than courts, powers which are strictly and consistently judicial. The power to determine the constitutionality of a legislative enactment is strictly a judicial duty.

The foundation of the Workmen's Compensation Act is the existence of an actual employer-employee relationship. It was designed to serve primarily the interests of contractually related individuals, the employer and the employee. That relation when established may place both under the provisions of the act. No power, however, exists in any branch of government to reach out and force into that relation one who is not an employee, but who is in fact and law the

servant of a stranger to the employer. See *Employers' L. A. Corp. v. Industrial Acc. Comm.* (1918), 179 Cal. 432, 177 Pac. 273; 1 Schneider, Workmen's Compensation Law (2d ed. 1932), p. 54, sec. 5. The theory of subagency or subemployee cannot be carried to the extent here attempted. The statute in question attempts to make a contract for a citizen without his consent. It cannot be read as doing anything other than declaring that complete strangers may by legislative fiat become contracting parties, whether they are doing anything for each other or not.

The statutory examples cited by appellant of persons without a direct contract of hire between them and the employer but who come under the compensation act are clearly distinguishable. In each of those cases—the magazine salesmen under sec. 102.07 (6), Stats., volunteer firemen under sec. 102.07 (7), and independent contractors under sec. 102.07 (8)—are all rendering services for the person deemed to be their employer.

The length to which legislation might go in creating an employer-employee relation between absolute strangers, if the commission holding were adhered to, was aptly pointed out by the trial court in his opinion:

"Suppose a guest at a Wisconsin summer resort hires an Indian guide of his own accord. Perhaps he picks him up in the woods somewhere, anywhere (as far the rationale of this golf-caddy statute is concerned) and the guide gets a fishhook in his hand or his eye, right on the premises of the resort owner, and the resort owner knows he is there, and sees him get hurt. Can any or all of these circumstances make the resort owner the employer of this guide? We think not.

"What about a patron of a cafeteria who brings along a boy to carry the tray for the patron? Can the 'permitted' patron's helper be built up by the statute into an employee of the cafeteria owner?

"What about a traveling salesman who comes to a factory, bringing an assistant to carry the sample cases for the sales-

man? Can the business guest's employee be converted by legislative enactment into an employee of the factory owner?"

His comment on the lack of requirement for pay to the one acting as caddy is that:

"Under this statute a man may bring his young son along as a caddy, the latter coming along merely for the fun and not being paid. . . . Yet the son . . . [is], *ipso facto,* [an employee] . . . of the golf club."

It is considered that sec. 102.07 (5), Stats., is unconstitutional as violative of due process of law in that it attempts to set up a relation of employer-employee that is absolutely contrary to fact and that respondent is within his rights in raising the question of the constitutionality of the act.

*By the Court.*—Judgment affirmed.