GANT and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*December 5, 1952—January 6, 1953.*

For the appellants there was a brief and oral argument by *Edward T. O'Neill* of Fond du Lac.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan*, assistant attorney general, and oral argument by *Mr. Levitan*.

For the respondent Robert L. Hendrickson there was a brief by *Maloney & Wheeler* of Madison, and *McDaniel, McDaniel & Reinoehl* of Darlington, and oral argument by *Donald F. Reinoehl*.

CURRIE, J.    The farms of Gant and of Oren Hendrickson were four miles apart.  However, Gant owned a separate 71-acre tract which was only about a half mile distant from the Hendrickson farm, which tract Mr. Hendrickson and his sons, Robert and David, rented from Gant on shares for the 1948 season to be planted in corn and oats.  Gant under the leasing arrangement was to supply half the fertilizer and half the seed, but no labor.  Without the Hendricksons asking him to do so, Gant came over during May with his own son and two tractors and the two Gants worked two or three days helping the Hendricksons disk and harrow 56 acres of the the tract to be planted in corn.  The reason Gant did this was because he could see that the Hendricksons were getting behind in their work as he had been in the neighborhood looking after some cows he had there.

Nothing was said between the parties about paying Gant for the work he and his son had performed.  However, the testimony disclosed that it was the custom among farmers of the community to exchange work.  The fact that the Hendricksons had not offered to pay Gant for his services would tend to support the inference that the parties were observing such custom of exchange of work which prevailed in the community, that when one farmer helped out another, the latter would repay in equivalent services at some future time.  The Hendricksons talked it over among themselves and decided they would help out Gant at some future date when he needed help in repayment for what he and his son had done.

In the fall of 1948 the Hendricksons bought a corn picker. About November 15th, Robert was operating it on the tract leased from Gant when Gant drove over and talked to Robert. Robert's testimony of what then transpired is as follows:

"Well, I was picking corn down on his [Gant's] land that we rented from him, and he come driving in there one day

pretty excited. He said it was getting awful late and he had a lot of corn standing in the field yet, so I told him not to worry and to quit picking it by hand; that when I finished over there, I would go over and pick it for him."

Some time later Gant came to the Hendrickson farm and asked Mr. Hendrickson for Robert. According to Mr. Gant: "I stopped in there and I told his father to tell Robert that he could come and pick that corn." Mr. Hendrickson informed Robert of Gant's call and shortly thereafter Robert went over to Gant's farm with the corn picker and a tractor to operate it. Gant was there at the time Robert arrived with the tractor and picker and showed Robert the field he wanted picked. Gant told Robert he wanted the middle of the field picked first and then the outside edges so as to make less driving on the ends, and to avoid slippery conditions.

Robert was asked at the hearing who had control over the work he was to do on the Gant farm and his answer was: "Well, I took it upon myself to go over there, and *Gant told me what to do and where to do it."*

Although the Hendricksons had bought the corn picker to do custom picking of corn for other farmers, as well as to pick the Hendricksons' own corn, nothing had been said between Gant and either Mr. Hendrickson or Robert about paying anything for Robert's services in picking Gant's corn with the picker. This establishes that the parties did not understand that any custom picking of Gant's corn was contemplated and tends to support the inference that Robert's services in picking corn for Gant was in repayment for Gant's services the previous May in helping the Hendricksons disk and harrow the cornland on the leased 71 acres.

In the words of Mr. Hendrickson: *"Well, we was exchanging.* He helped us in the spring of the year putting in them crops, making the bed ready for the corn, and we helped him out to pick his corn."

While operating the picker on the Gant farm it became clogged and while attempting to remove the material, which was responsible for impeding the proper operation of the mechanism, Robert's right hand and forearm got caught in the mechanism and were mangled.

Upon this review of the facts we now consider the applicable principles of law which are determinative of the issue raised by appellants that Robert at the time of his injury was not an employee of Gant as a matter of law in spite of the commission's finding that he was.

In view of the provision of sec. 102.23 (1), Stats., that the Industrial Commission's findings of fact are conclusive, such findings must be sustained if there is any credible evidence to support them. *Jasperson v. Industrial Comm.* (1939), 231 Wis. 142, 146, 285 N. W. 391. Appellants do not challenge this rule but contend that, inasmuch as the facts are not in dispute, the determination by the commission that the relationship of employer and employee existed between Gant and Robert at time of injury is a conclusion of law and not a finding of fact, and therefore is not conclusive on review.

Appellants are undoubtedly correct in their contention that the adjudication of whether an employer and employee relationship existed is the *"ultimate conclusion as to liability"* and therefore constitutes a conclusion of law even though it may have been labeled a finding of fact by the commission. *Tesch v. Industrial Comm.* (1930), 200 Wis. 616, 624, 229 N. W. 194. However, when facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one of such permissible inferences by the commission is an act of fact finding, and the inference so derived constitutes a finding of an ultimate fact and not a conclusion of law. *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 231, 52 N. W. (2d) 401; *Ebner v. Industrial Comm.* (1948), 252 Wis. 199, 201, 31 N. W. (2d) 172; *Green Valley Co-op.*

*Dairy Co. v. Industrial Comm.* (1947), 250 Wis. 502, 505, 506, 27 N. W. (2d) 454.

We deem the determination by the commission, that Robert at the time of the accident was performing labor for Gant pursuant to an implied contract arising from the exchange-of-work custom which prevailed among farmers of the community, lies in the category of the drawing of an inference from undisputed facts. The other permissible inference which the commission could have drawn from the facts was that Robert, in picking corn for Gant, was acting as a mere volunteer and not pursuant to any implied contract, but the commission did not choose to do so. In this field of drawing legitimate inferences from undisputed facts, inasmuch as the commission was thereby engaged in fact finding, the ultimate fact so found is beyond our power to review.

We, therefore, are confronted with but one question of law and that is whether Robert at the time of his injury was an employee of Gant, in view of the commission's finding that the services he was then rendering were being performed pursuant to an implied contract whereby Gant was being repaid for work he had previously furnished to the Hendrickson partnership. The decision of this court in *Northern Trust Co. v. Industrial Comm.* (1939), 231 Wis. 133, 285 N. W. 339, would seem to compel that this question be answered in the affirmative.

In the *Northern Trust Co. Case,* one Gilbert was the manager of the Maytag farm and one Reynolds was the manager of the Young estate farm in the same neighborhood. Both farms carried workmen's compensation insurance. For many years there had been an exchange of labor between the two farms. Gilbert was accidentally injured on the Young estate farm in a corn shredder owned by the Maytag farm. At the time of the accident Gilbert and other employees of the Maytag farm were on the Young estate farm performing labor in exchange for labor the Young estate farm employees had

performed on the Maytag farm. When work was performed on the Young estate farm, Reynolds, the manager, gave such directions as were necessary to Gilbert and the other Maytag farm employees, although at the time of the accident Gilbert was in direct charge of the mechanical operation of the shredder. Under the exchange arrangement no money was paid for the labor performed by the employees of the other farm although when machinery was supplied a cash rental for such machinery was paid. The commission found that, at the time of Gilbert's injury, he was in the employ of the Young estate and entered an order awarding workmen's compensation to Gilbert against the executor of the Young estate and his insurance carrier. This order was affirmed by the circuit court, and also by this court on appeal. In the opinion therein this court stated (p. 140):

"The fact that no fixed charge was made for the labor, and that no detailed account was kept of the interchange of labor, did not prevent Gilbert from being a special employee. 'The duration of time of employment is not a controlling factor nor is an agreed rate of wages necessary to the establishment of the relationship. *Johnson v. Wisconsin L. & S. Co.* 203 Wis. 304, 234 N. W. 506.' *Neitzke v. Industrial Comm.* 208 Wis. 301, 304, 242 N. W. 163."

While the exchange of labor in the *Northern Trust Co. Case* had been going on for some years, and in the instant case there was only the one instance of such exchange of labor, such distinction would not warrant a difference in result once the commission has found, as it did in the instant case, that the injured person at the time of accident was performing services pursuant to an implied contract based upon an exchange of labor.

In the *Northern Trust Co.* decision the court points out that the question of who had control of operations at the time the accident occurred is vital in determining whether an employer and employee relationship existed. In that case while

Gilbert, the injured man, was in charge of the shredder, the commission found that Reynolds, the manager of the farm where the services were being performed, was in general control of the work. In the instant case, although Robert was operating the corn picker, Gant had exercised control over the details of the work by telling Robert what to do and where to do it.

It is, therefore, our considered opinion that Robert at the time of his injury was the employee of Gant.

*By the Court.*—Judgment affirmed.

FRITZ, C. J. (*dissenting*). The primary questions involved in this case are whether Robert Hendrickson in picking the corn was working for Gant under a contract of hire, express or implied, or was a mere volunteer; whether an employer-employee relationship existed and presented a question of fact for the commission; and whether the commission's findings are conclusive if supported by any credible evidence.

It is undisputed that Robert Hendrickson, in partnership with his father and brother, operated a farm owned by his father, which was about four miles away from one of several farms owned and operated by Bernard Gant. In the spring of 1948, the Hendricksons rented 71 acres of one of Gant's farms from him and put in a crop of oats and corn. The rental agreement as to the remainder of said farm was that Gant supply half of the fertilizer and half of the seed, and receive half of the net proceeds from the crops produced thereon. Gant helped plant corn on that farm for a couple of days in the spring of 1948. Nothing was said about payment for this, and nothing was paid; and in doing this Gant figured that he was helping himself.

In the fall of 1948, the Hendricksons bought a corn-picking machine, to use for harvesting their corn and doing what custom work they had time for. On November 15, 1948, the corn-picking machine was being used by Robert Hendrickson,

who was picking corn on the land rented from Gant, who happened to stop by on his way to look at some cattle. In an ensuing conversation, Robert told Gant not to worry about the standing corn on his home farm; to quit picking it by hand, and that he would go over and pick it for him with the corn-picking machine. Gant did not ask Robert to do anything and nothing was said about pay for this and none was expected.

On November 29th, Gant stopped at Hendricksons and left word with the father that Robert could come and pick the corn. That afternoon, Robert, on his own accord, took a tractor, corn picker, and two wagons to Gant's home farm and the next day he started to pick the corn. Gant showed him the field to be picked and suggested where he wanted him to start. During the course of picking Gant's corn, the next day, Robert's machine clogged up, and he attempted to clean it while the power was on with the result that his right arm was seriously injured.

On the evidence taken in proceedings before it, the Industrial Commission found that at the time of Robert's injury, he was an employee of Gant; and on said findings the commission awarded compensation benefits to Robert. The trial court adopted the commission's findings and sustained the award of benefits to Robert.

Appellants contend that where, as in this case, the facts are not in dispute, the determination of whether the relationship of employer-employee existed constitutes a conclusion of law, and the determination of the commission is not conclusive. *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194; *Gomber v. Industrial Comm.* 219 Wis. 91, 261 N. W. 409. The mere fact that a conclusion of law is denominated a finding of fact does not make it such, or prevent it from being held to be a conclusion of law. *Voswinkel v. Industrial Comm.* 229 Wis. 589, 595, 282 N. W. 62. As in the case at bar, the facts in that case bearing on the alleged employer-

employee relationship were undisputed; when the commission stated "It is, therefore, further found that at the time of his injury applicant was an employee of respondent, . . ." it really was describing the commission's conclusions, as suggested in *Voswinkel v. Industrial Comm., supra.*

Gant and his insurer contend that at the time of Robert's injury he was not performing work for Gant as his employee, because he was not in Gant's service under any appointment or contract of hire, express or implied—as is necessary in order to constitute him an employee under sec. 102.07 (1), Stats.; that Robert had voluntarily entered upon and was performing that work at will, and was not obliged to enter upon or continue with the work; and that Gant was under no obligation to accept or keep him at work, or to compensate him therefore; and no such compensation was received or expected by him. As there existed between them no express or implied obligation whatever on the part of either, there was no such relationship as is essential to constitute the status of employer and employee in order to render the former liable for compensation within the meaning of the Compensation Act. As stated in *Bituminous Casualty Co. v. Industrial Comm.* 245 Wis. 337, 340, 13 N. W. (2d) 925:

"By the language of the act, sec. 102.07 (1), Stats., to be within the act the applicant must be 'in the service . . . under . . . contract of hire, express or implied.' This implies that the injured person must be under duty, legally obligated, under his contract to do the thing he is doing when injured, and there was no such duty or obligation here."

Robert volunteered to do the work in question for Gant without compensation, but was under no obligation to do it; and if he had refused to perform the work, that would not have subjected him to discharge or any penalty. As stated in *Wendlandt v. Industrial Comm.* 256 Wis. 62, 67, 39 N. W. (2d) 854:

"The foundation of the Workmen's Compensation Act is the existence of an actual employer-employee relationship. It was designed to serve primarily the interests of contractually related individuals, the employer and the employee. That relation when established may place both under the provisions of the act. No power, however, exists in any branch of government to reach out and force into that relation one who is not an employee, but who is in fact and law the servant of a stranger to the employer."

As stated in *Rice Lake Golf Club, Inc., v. Industrial Comm.* 215 Wis. 284, 287, 254 N. W. 530:

"The relation of employer and employee does not arise as a result of benefits conferred. There must be either expressly or by implication a contract of hire." See also *Koski v. Industrial Comm.* 233 Wis. 1, 288 N. W. 240.

Consequently, I cannot agree with the conclusion reached by the court.

GEHL, J. (*dissenting*). I am not convinced that the relationship of employer and employee is created where one as an expression of gratitude returns an act of kindness with a similar favor. I do not believe that the status of the parties is affected by the fact that they reside in a community in which it is customary for neighbors to exchange acts of grace with no thought of compensation. I do not agree that the fact that the family of the first beneficiary considered and suggested that he should return the favor is a circumstance which points to the creation of a new relationship between the parties. Nor do I agree that Hendrickson's testimony that Gant merely suggested the area at which the work was to be commenced establishes that Gant had the right to control the details of his work. Such right must exist to establish the claimed relationship, and is a "very important test." *Green Valley Co-op. Dairy Co. v. Industrial Comm.* 250 Wis. 502,

27 N. W. (2d) 454; *Ebner v. Industrial Comm.* 252 Wis. 199, 31 N. W. (2d) 172.

" 'The relation of employer and employee does not arise as a result of benefits conferred. There must be either expressly or by implication a contract of hire.' " *Koski v. Industrial Comm.* 233 Wis. 1, 3, 288 N. W. 240.

I fear that by the declaration of the majority we have established a precedent which may cause friendly neighbors to hesitate to continue to act in a manner in which they customarily do.

It does not seem to me that we should extend the rule of *Northern Trust Co. v. Industrial Comm.* 231 Wis. 133, 285 N. W. 339, where there had been an exchange of work over a period of many years and where the exchange seems clearly to have been prompted by more than a desire to trade one act of kindness for another.

Because of my fear of the result I am compelled to dissent.

I am authorized to state that Mr. Justice FAIRCHILD concurs in this dissent.