26 N.J. Super. 194 (1953)
97 A.2d 687
E. DONALD HARRISON, PETITIONER-APPELLANT,
v.
EDWARD H. STANTON, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1953.
Decided June 12, 1953.
*195 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. John H. Yauch, Jr., argued the cause for appellant (Messrs. Gilhooly, Yauch & Fagan, attorneys).
Mr. Arthur F. Mead argued the cause for respondent (Messrs. Cox & Walburg, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
No one today criticizes the alert business man who endeavors to row into the flowing current of success with muffled oars. An illustration is displayed by the present case in which an experienced and enterprising funeral director enlisted his assistant in the membership of an Optimist Club as a good-will solicitor incidentally to remind the sanguine fraternal brethren that the doors of death and of his employer's funeral parlor were always open. The belief that a live wire would be a dead one except for its connections has supplied many members to our social, civic, and fraternal organizations, and crowded our golf courses.
The justiciable question in the case before us centers in the legal responsibility of the employer for the payment of workmen's compensation to his subsidized good-will missionary if the latter suffers an accident in the pursuit of that undertaking.
*196 The factual aspect of the present case may at first glance appear to be somewhat anomalous, but an examination of the evidence discloses that it is not artificial.
For many years Mr. Edward H. Stanton has been a licensed funeral director and embalmer conducting his business in Nutley under the name of Stanton Funeral Home. The petitioner aspired to be a mortician and served his apprenticeship with Mr. Stanton. Upon attaining his requisite license, the petitioner continued his association and on September 26, 1950 was permanently employed by Mr. Stanton to serve him as a funeral director and embalmer and "to devote his full time, efforts and attention to said employment." The agreement of employment was in writing and contained relatively comprehensive terms exhibiting the contemplation that the petitioner might ultimately acquire the business and the funeral premises upon the death of Mr. Stanton.
When and how did the petitioner, Mr. E. Donald Harrison, become an Optimist? We quote Mr. Stanton's candid explanation:
"Q. Now, Mr. Stanton, do you recall the time that Mr. Harrison, while in your employ, was approached in connection with the formation of the Optimist Club in Nutley? A. I recall the time but it wasn't Mr. Harrison that was approached. I was approached.

* * * * * * * *
Q. Will you please tell us the facts in connection with that? A. Yes. Mr. Laducer in Nutley came down to see me and asked me about whether I would like to have Don join the Optimist Club as a representative of the Stanton Funeral Home, as they were just starting or had just started the organization of an Optimist Club in Nutley and they would like to have us represented. I told him I would like very much to do that, * * * I told Mr. Laducer that Don could not join at that time because he was going to an embalmer's school, but I told him I would like to have him hold his qualifications open for membership in the Club until Don finished his course and that I would be glad to have him represent our organization in the Club and that's what happened."
Mr. Stanton paid the petitioner's initiation fee and has ever since paid his membership dues. The membership entailed additional expenditures.
*197 Q. Now, Mr. Stanton, who paid the expenses that were incurred by Mr. Harrison in connection with his attending these various affairs  not only of the Optimist Club but the other organizations in which he represented your organization? A. I paid all expenses for anything he attended or attends as a representative of the Stanton Funeral Home."
Confirmatory are the current entries in Mr. Stanton's account book of business disbursements. We think that the persuasion that Mr. Stanton, the employer, implanted the petitioner, his employee, in the membership of the Optimist Club for the purpose of promoting his business is indubitable. In response to that purpose, and perhaps to other personal gratifications, the petitioner enthusiastically engaged in the activities of the organization, amongst which was the annual social but financially productive event known as the "Gay Nineties Party" arranged to produce funds for boys sports.
Mr. Stanton expressed his wishes:
A. Well, let me put it this way. Any time he could attend I wanted him to attend * * * whenever it was possible for him to attend, I wanted him to, because I feel it is good for business for him to be there and mingle with the people."
An anniversary "Gay Nineties Ball" was arranged to occur on the evening of April 21, 1951. Not only the members of the club but also their wives were expected to attend. Ever since the birth of their child about five years before this occasion the petitioner and his wife, in order to attend such social assemblages, were obliged to engage the services of an attendant commonly designated as a "baby sitter." Mr. Stanton appreciated the necessity of that custodial attention and had in each instance defrayed the expense incurred by the petitioner for the attendance of the baby sitter.
Such was the situation on the evening of April 21, 1951 when the petitioner called for and transported the baby sitter to his home, and he and his wife attended the party by means of Mr. Stanton's automobile, which the petitioner was privileged to use on all such missions. With the recession of the members and their guests at an early hour *198 of April 22, 1951 the petitioner and his wife returned to their home, his wife entered, and the baby sitter, a lass of 17 years of age, entered the car to be returned by the petitioner to her home. On the way there, a careless motorist crowded the petitioner's vehicle off the road and he thereby sustained bodily injuries for which he has sought workmen's compensation.
Both the deputy director of the Division and the judge of the County Court on appeal have denied the petitioner any such requested award. He now seeks our judgment.
It is said that our decisional law in this State concerning workmen's compensation is still in the making or, more accurately stated, in the remaking. The explanation is that the seeming divergencies of our decisions are in reality attributable to the variations in the factual circumstances of the cases. The concatenation of circumstances in the present case is odd, but the ambit of the petitioner's employment is not left in a state of uncertainty by the uncontroverted evidence. His serviceability as a member of the club to the business interests of his employer was not only recognized and authorized by the latter but, indeed, financed by him. The evidence indicates that provision for such a vocational and promotional association with the members of various organizations is a recognized practice in the business of a funeral director. And so in this instance the petitioner testified, "I joined it under the direction of Mr. Stanton." "If there was anything he wanted done specially, I would go ahead and do it * * *." Compare, Ferragino v. McCue's Dairy, 128 N.J.L. 525 (Sup. Ct. 1942).
It is obvious from the evidence that the petitioner's employment was not solely confined to the embalming of bodies, the participation in funeral services, the burial of the dead, and tasks strictly correlative. He was obedient to the directions of his employer, one of which was that he cooperate in the activities of the Optimist Club. Manifestly that assigned duty, however congenial to the petitioner, was sponsored by his employer for the betterment of the latter's business in which the petitioner was employed. Here there exists no *199 extreme remoteness between the principal and the supplemental service to be performed by the petitioner.
This case would not project a shadow of perplexity were it not for the homeward conveyance of the baby sitter, in which exigency the accident occurred. Was the transportation of the baby sitter within the boundaries of the employment? But for the extraordinary circumstances and conditions of the present case we would be inclined to think it was not. Only by reason of an intimate business relationship between an employer and his employee could such an exigency be contemplated as essential to the fulfillment of the employee's assignment.
It would be capricious to say that in no circumstances can a recreational activity be related to the obligations of an employment agreement. Many reported decisions may be found concerning the compensability of injuries sustained while in the pursuit of recreational activities. An examination of the adjudications discloses that the courts in determining whether the employment and the recreation are related with sufficient proximity to warrant an award, have evolved and resorted to certain relevant, though not exclusive, criteria, among which the following may be enumerated: (a) the customary nature of the activity; (b) the employer's encouragement or subsidization of the activity; (c) the extent to which the employer managed or directed the recreational enterprise; (d) the presence of substantial influence or actual compulsion exerted upon the employee to attend and participate; and (e) the fact that the employer expects or receives a benefit from the employee's participation in the activity. Vide, Kelly v. Hackensack Water Co., 10 N.J. Super. 528 (App. Div. 1950), and 23 N.J. Super. 88 (App. Div. 1952); Moore's Case, 110 N.E.2d 764 (Mass. Sup. Ct. 1953).
Here the employer had previous knowledge that some of the social entertainments of the club were arranged for the members and their wives; he knew that the petitioner and his wife had an infant child too young to be left at home unattended; he was aware of the necessity in such instances *200 of engaging the services of a baby sitter, for whose attendance he paid, and that the sitter resided elsewhere in the community. He had reason to anticipate that the petitioner and his wife would not return home from such evening functions until some late hour in the night. The employer entrusted his motor vehicle to the petitioner for his use on such occasions. It had been the custom of the petitioner to transport the sitter to and from her home whenever she was so engaged. And so the presence of the baby sitter at the petitioner's home appears to have been one of the conditions under which the petitioner was expected to execute the intent and purpose of his employer.
We would surmise that some provision for the return of the sitter to her home when her services terminated at midnight or thereabouts would not only be reasonably necessary but perhaps exacted. Assuredly in this instance the transportation of the baby sitter was predominantly in furtherance of the petitioner's attendance at the party. If it is to be regarded as a deviation, it then drops into the category of those committed for an accustomed and accepted purpose.
Our rationalization of this case will be misunderstood if it is supposed that our considerations have been confined to the correlation, if any, ordinarily existent, even incidentally, between the duties of an employed funeral director and embalmer and his attendance at a social ball. We are here concerned with the scope of the petitioner's express employment as a public relations representative of his employer.
In the light of the evidence we are led to the opinion that the reasonably appropriate activities of the petitioner in obtaining the presence of the baby sitter at his home was intrinsically a component of the mission of attending the ball which the petitioner was expected, if not directed, by his employer to fulfill and that but for the consummation of that mission the petitioner would not have encountered the accident and its injurious consequences.
In the peculiar circumstances of the case we conclude that the accident arose out of and in the course of the petitioner's employment and that the judgment of the County *201 Court under review should be reversed and the matter remanded for further proceedings not inconsistent with this opinion.