74 N.J. Super. 41 (1962)
180 A.2d 409
MARY O'REGAN, PETITIONER-RESPONDENT,
v.
NEW JERSEY HARDWARE COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided April 12, 1962.
*42 Mr. Herman M. Wilson argued the cause for petitioner-respondent.
Mr. Stanley J. Perwin argued the cause for respondent-appellant (Messrs. Schneider, Lustbader & Morgan, attorneys).
BARGER, J.C.C.
This is a workmen's compensation appeal. There was a dependency award to the widow and children of the deceased employee. The respondent-employer appeals.
The parties hereinafter will be referred to as petitioner, being the widow of the deceased employee; respondent, being the employer; and the deceased, being the employee.
The essential facts surrounding the happening of the accident are not in dispute. The issue is whether the accident resulting in the death of the employee, Dermott F. O'Regan, arose out of and occurred in the course of decedent's employment with the respondent.
The deceased is survived by his widow, petitioner Mary O'Regan, born August 25, 1910; a son, Dennis M. O'Regan, born February 16, 1949; a son, Sean J. O'Regan, born February 20, 1947; and a daughter, Noreen M. O'Regan, born July 20, 1945.
On April 25, 1959 the deceased was, and had been for about seven years prior thereto, employed by the New Jersey Hardware Company, respondent herein, as a salesman and estimator. His wages are stipulated to have been $115 per week. In addition thereto, decedent received certain fringe benefits as well as reimbursement from time to time for certain motor vehicle expenses and certain expenses incurred *43 in entertaining customers at lunch. The last-mentioned reimbursement was for meals and alcoholic beverages furnished to customers in ordinary business good-will entertainment.
On April 25, 1959 Mr. Robert M. Bost, president of Damon G. Douglas Company of Newark, New Jersey, building contractors, and a valued customer of the respondent over a period of about three years, arrived just before 5 P.M. at the place of business of respondent, 10-12 Bleecker Street, Newark, New Jersey. Mr. Bost testified that he came to the business premises of respondent for the purpose of purchasing certain hardware or to expedite a job or to discuss a job. He was not certain of the exact nature of his visit except that it was for business purposes. On occasion the business of his company was transacted with the deceased. Mr. Albert G.W. Martenson, secretary and treasurer of respondent, was in the premises at the time of this business visit. Mr. Martenson was also engaged in selling and estimating. In addition to these men, the deceased and possibly other employees of the respondent were present. The witnesses were not certain as to which other employees were present. However, the evidence does indicate that Mr. Martenson and the deceased were present. It was a Friday night and, as indicated, close to 5 P.M., the usual closing time for the business of the respondent. After transacting some business with Mr. Bost, Mr. Martenson inquired of Mr. Bost as to whether he was stopping at Fucci's Restaurant located on Central Avenue, Newark, New Jersey, which is a short distance away from the place of business of respondent. After being informed that Mr. Bost intended to stop there, Mr. Martenson suggested they have a drink together. It is noted at this point that Mr. Bost had been the guest of Mr. Martenson and the deceased at lunch on various occasions. However, this apparently was the first evening meeting under the circumstances indicated. Mr. Bost agreed to meet Mr. Martenson at the restaurant. The deceased, in the presence of Mr. Bost and *44 Mr. Martenson, said, "You can't leave me out." Mr. Martenson replied to this remark of the deceased, "No, come along." Thereafter, Mr. Martenson and the deceased walked to the restaurant, which is about a five-minute walk from the place of business of the respondent, and there met Mr. Bost. The conversation was general and was flavored with some business and some personal conversation of one purport or another. Each of the aforementioned persons bought a round of drinks, making three rounds in all. About 6 P.M., after having been in the restaurant for about one hour, they decided to leave. The testimony indicates that all of the persons concerned felt high but that no one was intoxicated. Upon leaving the premises and taking leave of each other they went their several ways. Mr. Martenson and the deceased walked to the parking area on the premises of the respondent where their vehicles were parked. They entered their vehicles and started for their respective homes. The deceased, who was living in Colonia, New Jersey at the time, drove off.
The normal working hours of the respondent were from 8 A.M. to 5 P.M., five days each week. It should be noted that it was unusual for anyone to work after 5 P.M., and unusual for an employee to work more than five days per week. It did occur, however, on occasions.
About 7:40 P.M. the deceased was operating his motor vehicle in a westerly direction on Maple Avenue and at a point opposite #682 Maple Avenue in Rahway, New Jersey. The motor vehicle of the deceased skidded and struck the rear end of a parked motor vehicle, the front of his vehicle striking the parked vehicle. The parked vehicle was at the curb on the north side of Maple Avenue and facing west. Someone notified the police and an officer from the Rahway Police Department arrived at the scene. At the scene the deceased indicated to the officer that he had not been injured. However, the officer summoned an ambulance. While questioning the deceased at the scene, the officer smelled an odor of alcohol on the breath of the deceased. Due to *45 the nature of the injuries sustained by the deceased, the officer was unable to secure very much information from him. Exhibit P-7-E indicates the nature of the skid marks left by the vehicle of the deceased just before it struck the parked vehicle.
The deceased was admitted to the Rahway Memorial Hospital about 8:30 P.M., where it was determined he was suffering from serious internal injuries, requiring an operation, and from which he died at 8:55 A.M. April 26, 1959.
Upon admission, the resident physician who examined the deceased and who prepared the personal history indicated therein that the patient appeared "drunk" and further indicated therein that he was "slightly drunk" and "slightly excited." The factual or medical basis for these opinions is not revealed in the history and the doctor did not testify.
The evidence establishes that the only relationship existing between Mr. Bost, the customer; Mr. Martenson, an officer and employee of the respondent; and the deceased, an employee of the respondent, was one of business nature. Furthermore, in the late afternoon on the day in question the persons mentioned gathered at the place indicated as a result of their past and present business relationship and to advance such relationship. Despite some talk of a personal nature, this was basically a mutually beneficial social-business interlude at the end of the working day. All parties, including the respondent, benefited from a business standpoint.
The court concludes that the social-business interlude was initiated by Mr. Martenson to further the business of his employer, the respondent. Such practices are commonly followed in the normal and ordinary course of business today. It is true that the deceased in effect invited himself. However, it must be borne in mind that he had had previous business dealings with Mr. Bost and had entertained him on previous occasions. Certainly, one must conclude from all of the circumstances that it was the *46 desire and intent of decedent to further this business relationship by being present at the time and place described. The social benefits are submerged in and were only incidental to the business relationship sought to be enhanced.
Travel to and from work may appear at first blush to be encompassed totally in the "to and from work" rule; however, there are exceptions as set forth in Moosebrugger v. Prospect Presbyterian Church, 12 N.J. 212 (1953), and commented upon in O'Brien v. First Camden National Bank & Trust Company, 37 N.J. 158 (1962). Mr. Justice Francis in the O'Brien case sets forth the general exception in the following language:
"Thus, when the accident happened, time, place and circumstances had merged in the interest of and at the direction of the employer to put him where he was."
The employer, of course, does not have any control over the employee during off-duty periods and is helpless to do anything to reduce or prevent accidents occurring to the employee between the home and the place of employment. The cases have not broadened the going to or coming from work rule but, as indicated in the O'Brien case, have created exceptions to it under the circumstances indicated in the Moosebrugger and O'Brien cases. Basically, compensation was designed to cover the risk of employment and not the risk of injury or death to the employee when off duty. The line of demarcation between on and off-duty, insofar as personal and employment interests are concerned, may at times, as indicated by Mr. Justice Wachenfeld in Green v. De Furia, 19 N.J. 290 (1955), be an elusive and difficult distinction.
As indicated in the Moosebrugger case, supra, there have been developed over the years certain exceptions to the going and coming rule as follows:
(1) Where transportation is furnished by the employer to and from the place of employment. Rubeo v. Arthur McMullen Co., 117 N.J.L. 574 (E. & A. 1937), 118 N.J.L. 530 (Sup. Ct. 1937);
*47 (2) Where the use of an automobile or other form of vehicle is required in the performance of the contract of service. Demerest v. Guild, 114 N.J.L. 472, 476 (E. & A. 1935);
(3) Traveling salesmen and others whose duties require them to travel from place to place. Geltman v. Reliable Linen & Supply Co., 128 N.J.L. 443 (E. & A. 1942), 139 A.L.R. 1465;
(4) Necessary travel while on special duty after regular working hours. Bobertz v. Board of Education of Hillside Township, 134 N.J.L. 444 (Sup. Ct. 1946); Van Ness v. Haledon, 136 N.J.L. 623 (E. & A. 1948);
(5) The employer has furnished transportation to the extent that it has ripened into a `custom.' Micieli v. Erie Railroad, 131 N.J.L. 427 (E. & A. 1943); and more recently,
(6) Those accidents occurring during and on the way home from employee sponsored functions. Kelly v. Hackensack Water Co., 10 N.J. Super. 528 (App. Div. 1950); Harrison v. Stanton, 26 N.J. Super. 194 (App. Div. 1953), affirmed 14 N.J. 172 (1953); Du Charme v. Columbia Engineering Co., 31 N.J. Super. 167 (App. Div. 1954); Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961), reversing 63 N.J. Super. 444 (App. Div. 1960).
Although the evidence does not indicate the actual reason why the vehicle operated by the deceased struck the parked vehicle, one may infer from the evidence that the "high condition" of the deceased, as a result of the drinks at the social-business episode, was a factor in affecting the reflexes of the deceased so that his car went out of control at the time and place indicated. This is further substantiated by the skid marks indicated in the photograph. This accident resulted in serious internal injuries to the deceased, from which injuries he died. The accident was unwitnessed, and under such circumstances the standard of proof is considerably relaxed in view of the nature of workmen's compensation, as indicated in Williams v. Corbys Enterprise Laundry, 64 N.J. Super. 561 (App. Div. 1960), certification denied 34 N.J. 330 (1961). It must be borne in mind that the employment need only be a necessary factor leading to the accident and the resulting injuries. The employment does not have to be the sole or proximate cause thereof. Celeste v. Progressive Silk Finishing Co., 72 N.J. Super. 125 (App. Div. 1962). There appears to be no other reasonable conclusion that *48 one can reach from the evidence than that the social-business drinking episode, beneficial to the employer, was a factor in the accident involving the deceased employee. Said accident caused his death.
For the purposes of workmen's compensation, the relationship of master and servant is usually suspended during off-duty periods. However, this court concludes that under all of the evidence in this case the accident happened at the time, at the place and under the circumstances which had merged in the interest of and at the direction of the employer. These circumstances put the deceased at the place where he was and in the condition he was in at the time of the accident. Consequently, these factors bring this case within the exception laid down in O'Brien v. First Camden National Bank & Trust Company, supra, and as a result I conclude that the accident did occur in the course of and did arise out of the decedent's employment. The court further concludes that the evidence in this case also brings the accident within exception (4) as set forth in the Moosebrugger case, supra  the necessary travel after a special duty and after working hours.
This court concurs in the findings and conclusions set forth in the well-reasoned opinion of the Division judge in compensation.
This court accordingly finds that the accident, resulting in the death of the employee, did arise out of and did occur in the course of his employment. This court makes the dependency awards and allowances as set forth in the detailed statement of the awards and allowances as set forth in the judgment below and in the amounts as set forth therein.