**OKLAHOMA NATURAL GAS COMPANY, Petitioner,**

v.

**Alvie WILLIAMS and the Workers' Compensation Court, Respondents.**

**No. 54834.**

Supreme Court of Oklahoma.

Dec. 1, 1981.

As Corrected Dec. 2, 1981.

Rehearing Denied Feb. 9, 1982.

---

Yvonne Sparger Nichols, Looney, Nichols, Johnson & Hayes, Oklahoma City, for petitioner.

John B. Estes and Ernest W. Eblen, Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, for respondents.

OPALA, Justice:

The question for decision is whether Claimant's injury in an automobile accident—while he was en route home from an annual Christmas party sponsored by his employer—occurred "in the course of his employment". The trial tribunal ruled that it did. We hold that the material findings made on this issue by the three-judge review panel rest on competent evidence and are hence binding on this court.

Claimant, an employee of Oklahoma Natural Gas Company [ONG], and his wife each received an invitation from their respective employers to attend a Christmas party scheduled for the same night. ONG's party was an annual affair for employees from the Enid area as well as for those of the local office. The wife had a fairly new job. She wanted to go to the Christmas party at the home of her boss. She had expressed a dislike of ONG parties. For that feeling she had been chided by Claimant's immediate superior. Claimant initially declined his company's invitation. He explained that he and his wife had decided to attend her employer's party.

ONG management at the Enid office placed considerable importance on the attendance of company-sponsored functions. Claimant had been told on different occasions that this was of value to one who desired "to get ahead in the company". With respect to the party in question, Claimant was reminded his responsibility there was to introduce his subordinates to employees from other districts. He was also reminded that "higher-ups" from outside his own office would be present.

ONG officials perceived the Christmas party as a function for the benefit of the employees. Consistent with this policy, ONG employees were "encouraged" but not officially "compelled" to attend. While Claimant's superiors did in fact seek to induce his attendance at the party held the evening of his accident, they were far from suggesting that he should go there merely for his own entertainment and pleasure.

ONG paid for the dinner and made all the necessary arrangements. While it kept no official attendee's "roll", a reservation list, passed among the employees at work, served to apprise the company of those who intended to be there. When Claimant did not at first sign up, his superiors contacted him in an effort to stress the importance of the function. No compensation was paid for attending nor was it withheld for one's absence. Claimant's supervisor had expressly authorized the use of an ONG vehicle to all company-sponsored social events. On the evening of the party Claimant used his own car.

With enough persuasion brought to bear by his superiors, Claimant decided it would further his career to attend the ONG party. He and his wife went to both events. They left their home in Fairmont—eight miles east of Enid—took their two minor children to Waukomis to the home of a baby sitter—eight miles south of Enid—and then went to the Enid home of her employer for the first party. They had dinner there. Leav-

ing their car behind, they then proceeded in a vehicle of their friends to the Enid Country Club for the ONG event.

When the ONG party ended, they returned to the home of the wife's boss to pick up their car. They were en route to the Waukomis home of the baby sitter when a wreck occurred.

The trial judge found that Claimant, when injured, was in the course of his employment. The three-judge review panel [1] affirmed the trial judge's award and added findings of its own.

### I.

Neither out-of-state case law [2] nor our own adopts a definitive test of employer's compensation liability for injury occurring in recreational or social activities. [3] Generally, an employee is said to be "in the course of employment" when he/she is on an uncompleted mission for the master or is performing an act reasonably incident to it. [4]

Liability for *on-premises* recreational and social activities is assayed by a set of recognized criteria. [5] Logic permits an extension of the same gauges to measure compensability applicable to *off-premises* functions.

■ Recreational and social activities are within the course of one's employment: (1) when they occur on the premises during a lunch or recreation period as a regular incident to the employment; or (2) when the employer *expressly or impliedly* induces participation, or makes the activity come within the orbit of employment duties; or (3) when the employer derives from the activity substantial direct benefit that extends beyond the intangible value of employees' health or moral improvement which is common to every kind of recreational and social event. [6]

■ Factor (1) governs *on-premises* activities. It is inapplicable here. Factor (2) deals with "compulsory attendance". One who is expressly required to participate is clearly furthering the master's business. [7] ONG made no direct order to Claimant to attend the party. The three-judge panel found *implied* compulsion inferable from an atmosphere of pressure created by the immediate supervisors. Claimant "reasonably perceived that he was obligated to attend". It would be unrealistic to believe that any employee under similar circumstances would have refused to attend the party. [8] The record amply supports this finding. Compulsory attendance to be implied from managerial behavior patterns presents, of course, a fact question. [9] Its resolution rests

1. Although the 1977 amendments—85 O.S. Supp.1977 § 3.6—continue to refer to a three-judge review panel as "the Workers' Compensation Court sitting en banc", the appellation appears lacking in legal precision. *Stricto sensu,* "en banc" means the entire membership of a multi-judge court. Black's Law Dictionary, 4th Ed. [1951] at p. 182; Webster's Third New International Dictionary [1961] at p. 745.

2. See anno. at 47 A.L.R.3d 566, 569–608; 1 Blair, Reference Guide to Workmen's Compensation § 9:14. Our survey of opinions from other jurisdictions indicates no clear consensus of opinion in any area discussed herein.

3. *Pearl v. Associated Milk Producers, Inc.,* Okl., 581 P.2d 894, 896 [1978]; *Tulsa Linen Service Co. v. Kroth,* Okl., 512 P.2d 172 [1973].

4. *State Farm Ins. Co. v. Worker's Comp. Court,* Okl., 609 P.2d 779, 780–781 [1980]; *Ryan v. State,* 128 Okl. 25, 261 P. 181 [1927]; 15 Okl. Law Rev. 102 [1962].

5. *City of Oklahoma City v. Alvarado,* Okl., 507 P.2d 535, 537 [1973].

6. *City of Oklahoma City v. Alvarado,* supra note 5; 1 Larson, Workmen's Compensation Law § 22:00.

7. 1 Larson, Workmen's Compensation Law, supra note 6 at § 22:22: "If the activity although not an integral part of the job is in effect required, it is clear enough that the employer has brought that activity within the employment... The compulsion need not take the form of a direct order if the employee is made to understand that he is to take part in the affair." See also *Clevenger v. Liberty Mut. Ins. Co.,* 396 S.W.2d 174, 182 [Tex.Civ.App.1965].

8. See also *Lawrence v. Ind. Comm. of Ariz.,* 78 Ariz. 401, 281 P.2d 113 [1955], where the court equated employer suggestion and encouragement with express order, in keeping with a recognition of the "realities of business".

9. *Pearl v. Associated Milk Producers, Inc.,* supra note 3 at 897; *Clevenger v. Liberty Mut. Ins. Co.,* supra note 7.

here on competent evidence and is hence impervious to appellate change.[10] Factual determinations are binding on review if supported by any competent evidence.[11]

Factor (3)—substantial benefit to the employer[12]—is strongly denied by ONG. Its testimony was designed to show the event beneficial only to the employees. We are urged that the annual Christmas party was planned for employees' pleasure far more than any other company-sponsored function. It is argued that mere improvement of employee morale is too intangible and speculative an element to meet the substantial benefit test.[13]

The panel's finding that ONG received a benefit from the party rests here on competent evidence. The cumulative effect of benefits flowing to an employer from company-sponsored activities, including social affairs, may be considered as a factor in determining the compensability of an injury occurring in that setting.[14] The party in suit appears to be part of an overall plan, consistent with modern business practice,[15] which allows management to observe employees in a more relaxed atmosphere and, quite possibly, to evaluate them in a context not possible in the ordinary workday situation. We disagree with ONG's argument that Claimant's attendance at company social functions afforded an advantage solely to him. A party designed to include personnel from an entire region constitutes a unique chance to convene employees not in daily contact with each other. They can be observed away from the ordinary work milieu for assessment of their behavior pattern and of their rapport with superiors,

peers and subordinates. The fruits of such company-arranged wide-area convocation affords a substantial potential for use in personnel evaluation.

The employer-benefit factor does present here a close question. So does the degree of implied compulsion exerted by ONG in its effort to induce Claimant's presence at the party. Standing in isolation, each of these factors may fall short of the mark. Considered together, they represent proof with inferences reasonably supportive of the trial tribunal's finding that Claimant's attendance at the party was an activity within the course of his employment.

In this case, the *compulsion-of-attendance* and the *benefit-to-employer* tests do not present themselves as independent alternatives. They stand here rather prominently at a point of intersection. For assessment of compensability the two tests, although formulated in the disjunctive, cannot be separated one from another. The latter implicates the former and *vice versa*.

Measured by purely objective criteria, benefit to ONG from its Christmas party may be sadly lacking in probative strength. Its weakness is nevertheless far from fatal to the claim. Objective evidentiary standard can be readily dispensed with. An acceptable substitute is supplied for this case by the crystal-clear proof of the employer's direct efforts to secure its personnel participation at the sponsored function by a systematic pattern of fostering among them the belief that the scheduled event represents a conscious tool of long-standing managerial policy. Management-induced

10. *Goombi v. Trent*, Okl., 531 P.2d 1363 [1975].

11. *Bittman v. Boardman Co.*, Okl., 560 P.2d 967 [1977].

12. *Kohlmayer v. Keller*, 24 Ohio St.2d 10, 263 N.E.2d 231 [1970]; *Youngberg v. Donlin Co.*, 264 Minn. 421, 119 N.W.2d 746, 749 [1963]; *Le Bar v. Ewald Bros. Dairy*, 217 Minn. 16, 13 N.W.2d 729, 731 [1944].

13. *Stout v. Sterling Aluminum Products Co.*, 213 S.W.2d 244 [Mo.App.1948]; Note: *Workmen's Compensation for Injuries Arising out of Recreational Activity*, Washington Univ.L.Q. 87 [1951].

14. *Hill v. McFarland-Johnson, Engineers*, 25 App.Div.2d 899, 269 N.Y.S.2d 217 [1966]; *Kohlmayer v. Keller*, supra note 12; *Ricciardi v. Damar Products Co.*, 45 N.J. 54, 211 A.2d 347 [1965]; *Gore v. New York Air Brake Co.*, 33 App.Div.2d 851, 305 N.Y.S.2d 814 [1969]. In *Gore* the court discusses the cumulative benefits from regular events as sufficiently related to employment to bring a separate activity, i.e. a picnic, within the scope of employment.

15. Cf: *Harrison v. Stanton*, 26 N.J.Super. 194, 97 A.2d 687 [1953].

belief that employee attendance at a scheduled function—widely professed by local executives to be of value to the company—if solicited either as "command performance" or as an "encouraged voluntary response" is itself eloquent proof of company-perceived benefit. Subjective though its nature, such proof is sufficient to show *both* company expectation of *"benefit"* to be derived from the programmed event and company use of open or subtle *"compulsion"* to attain its proclaimed policy goal of capturing maximum employee participation.

## II.

ONG asserts that the degree of supervision and control of the event constitutes the determinative factor. We disagree. It is merely one of several elements to be used as an analytical tool. The authorities where control appeared to be critical tend to support an award to Claimant.[16] Decisions in which this factor was isolated deny compensation based on a finding that employer's involvement in the social event was limited to providing funds.[17] Here, ONG arranged the location, paid all the costs, mailed invitations, posted a notice on the bulletin board at work, checked the reservations list at work and actively induced Claimant's attendance after he had initially declined the invitation. Additionally, ONG arranged for the attendance of employees from other districts, authorized the use of company-owned vehicles and—to facilitate Claimant's presence that evening—gave him permission to bring with him two outsiders as guests.

Although these acts may be said to fall within ONG's role as host rather than employer, its master status *vis-á-vis* Claimant cannot be viewed as having been suspended for the occasion under consideration here.[18] Although Claimant had no doubt freedom in choosing his arrival time and the route of travel to the party, the fact remains that his presence there was in furtherance of the master's business. His performance of that mission might have been imperfect or even grudgingly rendered, but that does not effect a severance of the existing master-servant bond for the injurious event.

## III.

A more difficult question is presented by the Claimant's travel route *via* the baby sitter's house. The review panel found the necessary causal nexus in the nature of the invitation. The wife's attendance was expected but not that of the underage children. Thus viewed, the return trip by way of the baby sitter's house was a clearly anticipated if not impliedly charted route home.

ONG asserts that Claimant's injury occurred while he was on a fatal deviation[19] from the direct route from his home in Fairmont to the Enid Country Club and back. This is so because the baby sitter's house is in Waukomis, eight miles in another direction.

Claimant relies on cases in which the employee's injury occurred while he was going to, or returning from, the *regular place of work to perform a special task outside regular hours* at the request of the employer and for the employer's benefit.[20] In those cases, the "special task" was treated as an exception to the general rule that

**16.** *Lybrand, Ross Bros. & Montgomery v. Industrial Comm.*, 36 Ill.2d 410, 223 N.E.2d 150 [Ill.1967]; *Noble v. Zimmerman*, 237 Ind. 556, 146 N.E.2d 828 [Ind.1957]; Anno. 47 A.L.R.3d 566, 584–585.

**17.** *Lawrence v. American Mut. Liability Ins. Co.*, 92 R.I. 1, 165 A.2d 735 [1960]; *Tagliaremi v. MacMillan Book Co.*, 279 App.Div. 696, 108 N.Y.S.2d 374 [1951]. *Contra, Auerbach Co. v. Industrial Commission*, 113 Utah 347, 195 P.2d 245, 248 [Utah 1948] in which the court denied the award, stating the "fundamental test of employer-employee relationship is right of control".

**18.** 1 Larson, Workmen's Compensation Law, supra note 6 at § 14, pp. 4–1 and 4–2.

**19.** 1 Larson, Workmen's Compensation Law, supra note 6 at 4–298 and 4–299; see generally *Qualls Transfer and Storage Co. v. Cummings*, Okl., 505 P.2d 183 [1973]; *Macke Vending Co. v. Abrahms*, 27 Pa.Cmwlth. 490, 365 A.2d 451 [1976].

**20.** *Impson v. Dillard's Brown-Dunkin Co.*, Okl., 489 P.2d 483 [1971]; *Thurston Chemical Company v. Casteel*, Okl., 285 P.2d 403 [1955].

regards travel to and from regular work as outside the course of employment. The underlying rationale of the claimant-invoked exception [21] recognizes that special missions present risks far in excess of those encountered in regular employment routine. The exception has been extended to travel to and from company-sponsored recreational and social events.[22] The exception governs this case.[23]

Claimant undertook to attend the Christmas party in furtherance of his master's business, and as an incident of his employment. The travel bears all the indicia of special duty mission that lies outside the work routine—an off-premises mission with the attendant extra risk.[24]

Notwithstanding the nature of the travel itself, ONG asserts the route toward Waukomis is a deviation and the errand to pick up Claimant's children is personal. ONG reasons that the injury occurred while Claimant was on an errand of his own.

In fetching the children at the baby sitter's house there was clearly a personal mission. Claimant and his wife attended two parties that night. They likely would have employed the sitter even if they had not gone to the ONG party. The dual purpose of the trip is not fatal to compensability. "If the work creates necessity for travel the employee is within [the] course of his employment, although at the same time [he is] serving a purpose of his own." [25]

The personal mission is subsumed in the joint purpose. The route home *via* Waukomis was duty incident to the impliedly compelled attendance at the ONG social event—a mission undertaken in furtherance of the master's business and induced by the latter's entreaties.

Our holding here rests on the very narrow factual situation. The step-by-step analysis is not to be construed as extending a rule of blanket compensability to all company-sponsored off-premises events. Each case must stand on its particular facts.[26]

The critical findings which form the underpinnings for this award rest on competent evidence. They are binding on us. The award is hence beyond our powers to disturb.[27]

## IV.

We do not reach here ONG's challenge to the constitutionality of that portion of 85 O.S.Supp.1977 § 42 which provides an 18% interest rate for unpaid compensation awards.[28] The matter is prematurely raised.[29] The extent of employer's liability for interest due on a compensation award could become a litigable issue after the remand of this case to the trial court. Petitioner is not precluded by this opinion from averring, in any ancillary proceeding that may follow, that its liability for interest stands constitutionally restricted to some

21. *See generally,* 1 Larson, Workmen's Compensation Law, supra note 6, § 15:00 et seq.

22. 1 Larson, Workmen's Compensation Law, supra note 6, § 16:10.

23. Restatement of the Law, Agency 2d §§ 228, 229 [1958].

24. Cf.: *Lybrand, Ross Bros. & Montgomery v. Industrial Comm.,* supra note 16, in which the court allowed travel to a place other than the normal place of employment, undertaken incidental to employment and for the accommodation of employer. See also *Ricciardi v. Damar Prod. Co.,* supra note 14; *Dodge v. Wm. J. Keller, Inc.,* 304 N.Y. 792, 109 N.E.2d 85 [N.Y. 1952].

25. *Qualls v. Cummings,* Okl., 505 P.2d 183, 186 [1973].

26. *Pearl v. Associated Milk Producers, Inc.,* supra note 3 at 897; *Youngberg v. Donlin Co.,* supra note 12 at 749.

27. *Goombi v. Trent,* supra note 10; *Bittman v. Boardman Co.,* supra note 11.

28. An attack on identical or similar grounds proved unsuccessful in *Cyrus v. Vierson & Cochran, Inc.,* Okl.App., 631 P.2d 1349, 1353–1354 [1981].

29. Interest is not assessable pending review of an award. Its determination must await disposition of appellate proceedings. 85 O.S.Supp. 1977 §§ 3.6(A) and (B), 42; *First Baptist Church, Bristow v. Halloway,* Okl., 402 P.2d 260, 262 [1965]; *Missouri-Kansas-Texas Railroad Co. v. Edwards,* Okl., 401 P.2d 303 [1961] and 401 P.2d 306 [1961]; *Reardon v. McDougal,* Okl., 524 P.2d 342, 344 [1974].

rate that is lower than that prescribed by the applicable legislation.

Award sustained.

IRWIN, C. J., and HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., concur.

BARNES, V.C.J., and SIMMS, J., dissent.