**OKLAHOMA DEPARTMENT OF VET-ERAN AFFAIRS and the State Insurance Fund, Petitioners,**

v.

**Danette Margaret AKRAM, and The Workers' Compensation Court, Respondents.**

No. 79216.

Court of Appeals of Oklahoma, Division 1.

Sept. 22, 1992.

Certiorari Denied Jan. 12, 1993.

Gary Bova, David Custar, Oklahoma City, for petitioners.

Steve Smith, Richard A. Bell, Norman, for respondents.

MEMORANDUM OPINION

GARRETT, Judge:

Respondent Danette M. Akram (Claimant) filed her Form 3 in the Workers' Compensation Court on July 3, 1991, alleging she sustained an accidental injury arising out of and in the course of her employment with Petitioner Oklahoma Department of Veteran Affairs (Employer). She alleged the date of the accident was June 13, 1991, at which time she broke her right foot while playing softball for the VA team. She slid into second base, catching her foot under the base. The trial court entered an order on February 21, 1992, finding that Claimant sustained an accidental injury to her right foot and that her injury arose out of and in the course of her employment. She was awarded temporary total disability (TTD) from June 14, 1991 to December 1, 1991. The issue of permanent disability, if any, was reserved for future hearing. Employer brings this review proceeding from the trial court's order.

Employer contends that the trial court erred in finding that the injury arose out of and in the course of Claimant's employment, as no tangible incidental benefit accrued to Employer from the after-hours softball game.

■ The recognized rule with regard to compensability for injuries incurred during recreational activities is found in Larson, *Workmen's Compensation Law,* Vol. 1A, § 22:

> § 22.00 Recreational or social activities are within the course of employment when
>
> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, bring the activity within the orbit of the employment; or (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

This rule is endorsed in Oklahoma case law. See *Oklahoma Natural Gas Co. v. Williams*, 639 P.2d 1222 (Okl.1981); *City of Oklahoma City v. Alvarado*, 507 P.2d 535 (Okl.1973); *Warthen v. Southeast Okl. State University*, 641 P.2d 1125 (Okl.App. 1981). In the instant case, Claimant testified that her supervisor, who also plays softball, encouraged her to play, as did their former administrator. She stated she had been asked to play a couple of times by other employees, and finally agreed to play the second week because more women players were needed for the team, which was co-ed. She stated the games took place right after work, and that the supplies were provided by Employer or the State. Employer did not buy the uniforms, but did tell the players the type of clothing to wear. Employer had "Purple Hearts", the name of their team, printed on their shirts. She stated there were notices about joining the team all over the building. Employees on the team were not given time off work for the games or practices. The games were all played on State property, although they may have taken place on the property of a different state agency, rather than on Employer's property. She never had to pay any fees to be on the team.

Claimant testified that joining the team was voluntary, as were all of their activities, and that no one told her she had to play on the team. She stated there was no intimidation or coercion to join, and that she did it because she wanted to join. She also testified that joining the team would not help her get raises or promotions. She also stated that joining the team helped her working relationships with the employees, because it allowed her "to see a nicer side of them" and that it was one form of relieving stress. Claimant stated the notices, which were in the nature of flyers, about softball were on all doors coming and going in the office buildings, the doors on the administration office, the nurse's doors, and the kitchen areas. She stated that there were other types of notices on the bulletin boards, as well, such as notices about promotions, job openings and items for sale.

Tom Morton, a stock clerk for Employer, testified he was the coach of the softball team. He stated their equipment was supplied by the State. He said he was not aware of a policy by the administration to put coercion or pressure on employees to join, only encouragement. He said that it was done on a strictly voluntary basis, and that he could not imagine it helping anyone's job or making a difference with their employment one way or the other. He said the flyers were not posted at the request of the administration, and that, in fact, they had to get permission to post them around the building. He said he considered the elements of "encouragement" by the administration to be: (1) the use of the State's equipment, (2) posting the flyers, (3) playing on state property and (4) verbal congratulations for playing. He said his work in setting up schedules, calling, and doing some of the "leg work" was done on company time, but that some of the meetings were after work. He said his organizational activities, apart from his team, took place after working hours in almost all instances. He also stated some of the memos he received from other agencies were on state letterhead, but the ones he sent out were not. He stated they never played games any place other than on state property.

Richard Devine, Employer's personnel officer, testified Employer did not in any way require or coerce employees to play on the team. He stated it would not affect their job evaluations or working relationships if they chose not to participate, and Employer considered it strictly a voluntary activity. He said the equipment used by the team was purchased or donated for the patients at the facility, not for the softball team,

and the personnel office did not consider the team operation a part of agency policy or procedure. He said he knew the employees were playing, that he did not mind it, and that the employees on the team had to seek permission to post their flyers. He stated Claimant's medical claims were submitted under the workers' compensation policy, not under her health insurance policy, and that he, or someone in his office through his direction, had Claimant complete the paperwork for doing this.

At the end of the testimony, the trial court directed the attorneys to file briefs, and stated the issue involved is "whether there's an incidental benefit to the Respondent [Employer], and I think there is quite a bit of case law."

Claimant argues in her brief that an atmosphere of pressure to participate was created through the notices placed around the building, through Employer's providing the equipment, through Employer's telling the team members what to wear and having their team name printed on their shirts. Also, she contends the encouragement to participate came not only from other employees, but also from her supervisor and the former administrator. She testified she was a nurse, and that there were doctors on the team, as well.

Although subtle forms of encouragement can be seen as compulsion to participate, i.e., "impliedly requiring participation", the evidence does not support the inference that Claimant felt compelled to join because her job depended on it. The factual circumstances of the present case do not suggest Claimant was persuaded to join, through implied pressure, to such an extent that the activity became "part of the services of the employee" or to bring the "activity within the orbit of the employment...." Moreover, Employer never *expressly* told Claimant she was expected to join the team. In fact, there was no evidence showing that Claimant felt her participation was anything other than a voluntary act. She testified, and Morton and Devine agreed, that it was unlikely her job security, salary raises, or promotion possibilities would be affected. Although Claimant testified the benefit to be derived from her participation was that she could see a "nicer side" to the people she worked with, and that it was good to relieve stress that was naturally associated with the job, as above pointed out, the employer benefit must be beyond the intangible value of improved health and morale.

The Supreme Court stated in *Oklahoma Natural Gas Co. v. Williams*, 639 P.2d 1222, 1224 (Okl.1981), with regard to implied compulsion:

> Compulsory attendance to be implied from managerial behavior patterns presents, of course, a fact question.

See also *Roberts v. Department of Public Safety*, 654 P.2d 1088, 1091 (Okl.App.1982). We are well aware that findings of fact made by the trial court are binding and conclusive in review proceedings before this Court, unless they lack support in competent evidence. *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okl.1984).[1] It is only when competent evidence is lacking that the trial court's decision may be determined to be erroneous as a matter of law. *Parks*, supra. We conclude there is no competent evidence to support the court's finding that Claimant's injury arose out of and in the course of her employment.

ORDER VACATED.

ADAMS, P.J., and JONES, J., concur.

---

1. This case is distinguishable from the recent case of *Val Gene's & Associates, Own Risk v. Patrick Balogun*, 833 P.2d 1265 (Okl.App.1992). In *Val Gene's*, the softball teams were sponsored by the employer and were restricted to employees only. Claimant participated at the invitation of Employer, and each team played only teams made up of employees of other Val Gene's restaurants. The purpose of the softball program was to promote company-employee relations as well as employee-employee relations, to boost employee morale, and to promote a friendly, but competitive atmosphere between employees of Employer's different restaurants which was deemed economically beneficial by Employer's management. The evidence would have supported the finding of inducement to participate, as well as the other criteria of the general rule adopted from Larson, supra.